RABORG's Adm'x. *vs.* HAMMOND's Adm'r.—June, 1827.

In an action of replevin for a slave, where the plaintiff derived his title under a will, a copy certified by the register of wills under his seal, is competent evidence.

The orphans court of one county have no authority to grant letters of administration on the estate of a person who resided and died in another county

By the act of 1798, *ch.* 101, *sub ch.* 5, *s.* 3, the orphans courts are expressly enjoined to inquire into and adjudicate on, the "time and place" of the death of a deceased intestate.    That duty, however, is presumed to have been rightfully discharged, when the question of administration incidentally arises in other courts; and therefore, in a suit instituted by the administrator, it is not competent for a court of law to go into an inquiry whether administration has been rightfully granted or not.

If letters of administration have been improvidently issued, or have been obtained by fraud, or deceit, they may be revoked by the orphans court upon application made for that purpose; the power of revocation under such circumstances, being necessarily inherent and a part, and of the essence of the power delegated to them, of granting administration.

Where a witness stated that he was well acquainted with the family of two brothers, and was at their father's, and heard on the day of their burial, and at their funeral, from their father and sisters, that one of them, (naming him,) died a few hours before the other; and although at the time of the examination, one of the sisters was alive, and within the reach of the process of the court, the father and the other sister being dead—*Held,* that such evidence of the times of the respective deaths of the said brothers, so far as the information of the witness was derived from the deceased father and sister, was admissible to prove which of the two brothers survived the other.

A devise of negroes to T, his heirs and assigns, and "if the said T should die without heirs of his body lawfully begotten, *or* before he shall arrive unto the full age of 21 years, then to A," &c. is good by way of executory devise to A.    The word *or* in this limitation being construed to mean *and.*

APPEAL from *Baltimore* County Court. This was an action of replevin, brought on the 14th of September 1816, by the appellee, (the plaintiff in the court below,) against the appellant, (the defendant in that court,) for a slave named *Nathaniel.* The declaration stated the property of the slave in question to be in the plaintiff as administrator. The defendant pleaded property in herself as administratrix. To this plea there was a general replication, and issue was joined.

1. The plaintiff at the trial offered to read in evidence the following paper, purporting to be a copy of the will of a certain *Thomas Hammond,* under whom the plaintiff claims the property in dispute in this cause: "In the name of God, Amen. I, *Thomas Hammond,* of *Anne-Arundel* county, and province of *Maryland,* being of perfect sound mind and memory, and ordered in a few days to join General *Washington's* army, and if it should be the pleasure of our Supreme Judge that I should not return again, I hereby make my last will and testament in manner and form following, to wit: I give," &c. &c. "*Item.* I give and bequeath unto my said son, *Thomas Hughes Hammond,* his heirs and assigns forever, negroes *Mariah* and *Nell,* also three of my best horses, and four of my best cows, with all the increase of the said negroes and stock, but the said negroes and stock are to remain and in possession of his mother until he shall arrive to the full age of twenty-one years, and if his mother should depart this life before he shall arrive to the full age of twenty-one years, then my executors are to take the said negroes and stock under their care. And if the said *Thomas Hughes Hammond* should die without heir of his body lawfully begotten, or before he shall arrive unto the full age of twenty-one years, then I give and bequeath unto my brother *Andrew Hammond,* his heirs and assigns, forever, all my dwelling plantation, with the appurtenances thereto belonging; also the negroes and stock devised above to the said *Thomas Hughes Hammond,* but the negroes to remain and be in possession of his mother, *Elizabeth Hammond,* during her natural life. It is also my desire that the lot of ground," &c. &c. "I hereby appoint my brothers *William Hammond* and *Andrew Hammond* to be executors of this my last will

and testament.   In testimony whereof I have hereunto affixed my hand and seal this twenty-sixth day of August 1776.

*Thomas Hammond,* (Seal.)

Signed, sealed and delivered, in the presence of us, *George Hammond,* junr. *Harriet Hammond, Margaret Hammond.*

*Anne-Arundel* County, sct.   The 24th March 1777, came *George Hammond,* one of the subscribing witnesses to the within will, and made oath on the Holy Evangels of Almighty God, that he saw *Thomas Hammond,* the testator, sign and seal this will, and heard him publish, pronounce and declare the same to be his last will and testament, and at the time of his so doing he was of a sound and disposing mind, memory and understanding; and that he, together with *Harriet Hammond* and *Margaret Hammond,* signed their names as witnesses to this will, in the presence and at the request of the testator, and in the presence of each other.

Sworn before me,        *Eli Valette,* D. Com. *A. A.* Co.

In testimony that the foregoing is a true copy taken from Liber W. S. No. 2, folios 432 to 433, I hereto set my [SEAL.] hand, and affix the seal of my office, this 21st day of May 1825.

*Thos. H. Hall,* Reg. Wills, *A. A.* Coty."

To the reading of which paper in evidence the defendant objected; but the Court, [*Archer,* Ch. J. and *Ward,* A. J.] overruled the objection, and suffered the paper to be read to the jury, being of opinion that the same was competent evidence in this cause.   The defendant excepted.

2. The plaintiff then proved by a competent witness, that *Thomas Hammond,* the above named testator, died in January 1777, and *Andrew Hammond,* who is named in the aforementioned will, survived the testator, and resided and died in *Anne-Arundel* county in this state, a few hours after the testator.   And then, to show himself to be the administrator of the said *Andrew,* duly appointed, offered to read, and did read in evidence, the following certificate of the granting of administration on the estate of said intestate, *Andrew Hammond,* to him the plaintiff, given by the register of wills for *Baltimore* county in this state.

"*United States* of *America.* The state of *Maryland*, to all whom these presents shall come. Know ye, that on the eleventh day of June, in the year of our Lord one thousand eight hundred and sixteen, administration of all and singular the goods, chattels and credits, which were of *Andrew Hammond*, late of said county, deceased, was granted and committed unto *Samuel J. Donaldson* of the county aforesaid, he having first entered into bond, with sufficient security, for the due performance thereof; and also taken an oath well and truly to administer the same, to exhibit a true and perfect inventory of the said goods and chattels, and to render a just account of his administration when he should be thereto legally required.

Given under my hand, and seal of office, this twenty-fourth day of October, in the year of our Lord eighteen hundred [SEAL.] and twenty-five, and of the independence of the United States the fiftieth.

*D. M. Perine*, Register of Wills for *Baltimore* County."

Upon which the defendant prayed the opinion of the court, that the letters of administration, so granted to the plaintiff, were wholly inadmissible and void, and that the orphans court of *Baltimore* county had no authority to grant the same. Which opinion the court refused to give. The defendant excepted.

3. The plaintiff then gave in evidence, by a competent witness, that *Thomas Hammond*, the testator before mentioned, and *Andrew Hammond*, the plaintiff's intestate, died and were buried on the same day, at their father, *Lawrence Hammond's* farm; and he further offered to prove by the same witness, that he was well acquainted with the family of the said *Thomas* and *Andrew Hammond*, and was at their father's, and heard, on the day of the burial of the said *Thomas* and *Andrew*, and at their funeral, that the said *Thomas* died a few hours before the said *Andrew*; and that he heard that fact from the father (who is now dead,) of said *Thomas* and *Andrew*, and from the sisters of said *Thomas* and *Andrew*, one of whom, (that is one of the sisters,) is now dead, and the other, *Harriet Hammond*, is now living in the city of *Baltimore*. To the admissibility of which said hearsay evidence of the death of said

*Andrew* after *Thomas,* the defendant objected. But the court were of opinion that the evidence of the time of the respective deaths of *Thomas Hammond* and *Andrew Hammond,* so far as the information of the witness was derived from the father and sister who are now dead, is admissible evidence to prove that the said *Andrew Hammond* survived the said *Thomas.* The defendant excepted.

4. The plaintiff in addition, &c. offered in evidence, that *Thomas Hammond,* late of *Anne-Arundel* county, deceased, was in his lifetime possessed of two negro women named *Nell* and *Maria,* as his own property; and on the 26th of August 1776, duly executed his last will and testament, as herein before mentioned; that after the execution of said will and testament the said *Thomas Hammond,* the testator, departed this life, possessed of the said negroes as his own property, leaving his said son *Thomas Hughes Hammond* then an infant, and his widow the said *Elizabeth,* the mother of the said *Thomas Hughes Hammond,* and the said *Elizabeth* took possession of said negroes *Nell* and *Maria;* that after the death of said testator the said negro *Nell* had a son named *Nathaniel,* or *Nat;* and that said *Thomas Hughes Hammond* afterwards departed this life before he attained the age of twenty-one years, unmarried, and without issue. That the said *Elizabeth Hammond,* after the death of her said son, retained the possession of said negroes *Maria* and *Nell,* and their increase, and sold *Nat* above named, to a certain *Samuel R. Smith,* for a valuable consideration, and delivered to him the possession of said *Nat;* and the said *Samuel R. Smith* afterwards sold and delivered said negro *Nat* to the defendant's intestate for a like consideration; and that said *Elizabeth* afterwards died before the present action was instituted. The plaintiff also offered in evidence, that *Andrew Hammond,* named in the will of said *Thomas Hammond,* survived the said *Thomas,* the testator, and afterwards died in the lifetime of said *Thomas Hughes Hammond,* intestate. And also offered and read in evidence the certificate of the granting of the letters of administration on the personal estate of said *Andrew Hammond,* to the plaintiff. And also offered in evidence, that negro *Nathaniel* or *Nat,*

above named, to recover whom the present replevin was brought, is the same negro *Nathaniel* or *Nat*, who was the son of negro *Nell* above named. Whereupon the defendant prayed the opinion of the court, and their direction to the jury, that upon the evidence above stated the plaintiff is not entitled to recover. Which opinion and direction the court refused to give. The defendant excepted; and the verdict and judgment being against her, she appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN, and DORSEY, J.

*Meredith*, and *R. Johnson*, for the Appellant, contended, 1. On the *first* bill of exceptions, that the paper offered in evidence was improperly admitted, because it was not properly authenticated.

2. On the *second* bill of exceptions, that as *Andrew Hammond*, the plaintiff's intestate, appears by the evidence to have resided and died in *Anne-Arundel* county, the orphans court of *Baltimore* county had no authority to issue letters of administration on his estate; and that the letters which they did issue were wholly void.

3. On the *third* bill of exceptions, that the hearsay evidence of the times of the deaths of *Thomas* and *Andrew Hammond*, admitted by the court below, was improperly received.

4. On the *fourth* bill of exceptions, that the court below should have granted the defendant's prayer, that the plaintiff was not entitled to recover; because by the will of *Thomas Hammond*, the absolute property in the woman *Nell*, and her increase, part of which issue was in controversy in this cause, was vested in *Thomas Hughes Hammond*, the legatee mentioned in the will; and the bequest over to *Andrew Hammond*, the plaintiff's intestate, was void, because too remote.

1. The objection raised as to the evidence admitted in the *first* bill of exceptions was abandoned.

2. On the *second* point, they cited the act of 1798, *ch.* 101, *sub ch.* 5, *s.* 2, and *sub ch.* 15, *s.* 20. *Scott v Burch's Adm'x.* 6 *Harr. & Johns.* 67. *Cullum v Bevans, Ib.* 469. 2 *Stark. Evid.* 546. *Wilbraham v Snow*, 2 *Saund.* 47. k. *The State use of Marshall v Spedden*, 3 *Harr. & Johns.* 251.

3. The hearsay evidence offered was inadmissible, because there was a person living who was a witness to the same fact. It was not, therefore, the best evidence in the reach of the party. 1 *Phill. Evid.* 174, 167, 175. *Williams v East India Company,* 3 *East,* 193.

4. The bequest over was too remote, and was therefore void. Even if *or* is to be construed *and,* yet the limitation over is void. *Whitmore v Weld,* 1 *Vern.* 326, 347. *Gray v Shawn,* 1 *Eden,* 153. But neither of the constructions is the correct one. The court may reject the words "or before he shall arrive unto the full age of twenty-one years." *Attorney-General v Hird,* 1 *Bro. Ch. Rep.* 170. If the preceding words are retained, do they import a general failure of issue of the legatee? 2 *Fearne,* (7 Ed.) 136, 339, 486. *Goodman v Goodright,* 2 *Burr.* 873. 2 *Blk. Com.* 175. *Dallam v Dallam's Lessee,* 7 *Harr. & Johns.* 220. The words heir of the body, and heirs generally, and like issue, are synonimous. *Butterfield v Butterfield,* 1 *Ves.* 133. *Attorney-General v Hird,* 1 *Bro. Ch. Rep.* 170. *Crooke v De Vandes,* 9 *Ves.* 197. *Elton v Eason,* 19 *Ves.* 73. *Hill v Burrow,* 3 *Call's Rep.* 342. *Tate v Tally, Ib.* 354. The opinion of *Daniel Dulany, Esquire,* 1 *Harr. & M'Hen.* 559. *Britton v Twining,* 3 *Meriv.* 176, 183. *Fearne,* 178. *Co. Litt.* 22,a. 6 *Cruise,* 332, s. 13, 14, 15. *Denn v Slater,* 5 *T. R.* 335. *Preston on Leg.* 98. *Donn v Penny,* 1 *Meriv.* 20. *Purefoy v Rogers,* 3 *Saund.* 388, *(note 9.)* *Seale v Seale,* 1 *P. Wms.* 290. *Stratton v Payne,* 3 *Bro: P. C.* 257. *Preston,* 148. *Barlow v Salter,* 17 *Ves.* 481. *Hunt v Stevens,* 3 *Taunt.* 115. 2 *Phill. Evid.* 290.

*Taney,* and *S. J. Donaldson,* for the Appellee. 1. On the *second* bill of exceptions, they referred to the act of 1798, *ch.* 101, *sub ch.* 5, *s.* 2, 3, and the act of February 1777, *ch. 8,* which was not repealed by that of 1798, except so far as was inconsistent with it. They cited *Kempe's Lessee v Kennedy,* 5 *Cranch,* 186. *Shivers v Wilson,* 5 *Harr. & Johns.* 130. *Barney v Patterson,* 6 *Harr. & Johns.* 182. *Burch v Scott, Ibid,* 67. 3 *Bac. Ab.* 50, 51. *Hepburn v Sewell,* 4 *Harr. & Johns.* 393.

2. On the *third* bill of exceptions, they cited 1 *Phill. Evid.* 187. *Jackson v Boneham*, 15 *Johns. Rep.* 226. *Higham v Ridgway*, 10 *East*, 120. *Whitelocke v Baker*, 13 *Ves.* 514.

3. On the *fourth* bill of exceptions, they w· ·e stopped by the court.

DORSEY, J. delivered the opinion of the court. The opinion of the county court, on the *first* bill of exceptions, being concurred in by consent, we approach the consideration of the question arising on the *second* bill of exceptions, not without a just sense of its intrinsic difficulty, and the important consequences which may result from its determination, let that determination be what it may.

It cannot be denied, that if *Andrew Hammond* resided and died, as is alleged, in *Anne-Arundel* county, that the orphans court of *Baltimore* county had no authority to grant on his estate letters of administration to the appellant.

But the question is, such letters having been granted, is it competent for a court of law, in which a suit may be instituted by the administrator, to go into an inquiry whether administration has been rightfully granted or not?

If such inquiry can be made in this incidental collateral mode of proceeding, you convert the county courts into appellate tribunals to revise and reverse the decrees of the orphans court, on subjects over which, by law, they have the sole and exclusive jurisdiction, and in relation to which their acts can only be reviewed by regular appeal to the court of chancery or court of appeals; and this inquiry, too, if tolerated, would generally work injustice, and operate as a surprise upon the party. Without any direct or positive monition that the legality of his appointment were at all put in issue, he might be turned out of court by the admission of testimony which he did not anticipate, and of which he could have offered the most conclusive refutation, had an opportunity been afforded him. Resting, too, upon verdicts of juries, the question of administration would ever be involved in perilous uncertainty; a verdict delivered in one case would be no evidence on a trial in another; conflicting verdicts might be given by different juries in the same term, and in the same court; and much more probable is it, that such in-

congruity would arise where trials are had in different courts, or at different terms.  Indeed it might not unfrequently happen, in such a state of interminable controversy, that an administrator, after recovery of one half the property and debts belonging to the deceased, by the death of witnesses, or some such cause, might be forever deprived of all chance of recovering the residue; the proof to sustain his right to the administration being no longer attainable; a result ruinous as well to creditors as to helpless widows and orphans, who have ever been the especial objects of favour and protection of the law. Every consideration, therefore, of convenience, justice and public policy, demands that the question of administration, when finally determined by the tribunals created for that purpose, should never be a subject of doubt or litigation when incidentally arising in other courts.  Such an anomaly in judicial proceedings, this court would never willingly sanction.

By the act of 1798, *ch.* 101, *sub ch. 5, s. 3*, the orphans courts are expressly enjoined to inquire into and adjudicate on the "time and place" of the death of the deceased intestate; and this duty we are bound to presume has been rightly discharged; but whether it be so or not, is in this case no longer a subject open to discussion.  If there be any principle of law in this state unalterably settled by authority it is this, that the judgment of a court of competent jurisdiction, when coming incidentally in question, or offered as evidence of title in any other court, (as is the case here,) is conclusive upon the question decided, and cannot be impeached on the ground of informality in the proceedings, or error or mistake of the court, in the matter on which they have adjudicated.  *Barney's Lessee v Patterson*, 6 *Harr. & Johns.* 182, and the case of *Taylor & M'Neal v Phelps*, 1 *Harr. & Gill*, 492.

It has been strongly urged in the argument of the appellant's counsel, that if the judgment of the county court be sustained, the grossest frauds and deceptions will be practised in obtaining letters of administration in other counties than those in which intestates may have died; and that there may be at the same time two or more administrators appointed by the orphans courts of different counties.

Let the decision of this court on the subject before them be what it may, it neither increases nor lessens the inconveniencies which have been suggested.

For this evil the orphans courts alone are competent to apply a remedy. If letters of administration have been improvidently issued, or have been obtained by fraud or deceit, they may be revoked by them upon application made for that purpose.

But it is alleged that this power of revocation is denied to the orphans courts by the 20th *section* of the 15th *sub chapter* of the act of 1798, *ch.* 101, which provides that "the orphans courts shall not under pretext of incidental power or constructive authority exercise any jurisdiction whatever not expressly given by that act or some other law." But to this it may be answered that we deem the power of revocation, under such circumstances, as necessarily inherent in the orphans courts, and a part and of the essence of the power delegated to them, of granting administration. In confirmation of which, see 3 *Bac. Ab.* 50, where speaking of the ecclesiastical tribunals of *England* in the reference to this power, it is stated, that "it would be absurd to allow a court jurisdiction herein, and at the same time deprive them of the liberty of vacating and setting aside an act of their own, which was obtained from them by deceit and imposition." But this question, even if it were matter of doubt, we should be disposed to view as settled by the construction given to this act of assembly by the orphans courts, who have exercised this power from the time of its passage until the present day, a space of nearly thirty years; and by the decision of this court in the case of *Fishwick v Sewell*, 4 *Harr. & Johns.* 429, where in affirming the opinion of the county court in rejecting testimony offered to impeach letters of administration, they say, "that the said letters of administration were legally efficient until revoked, being clothed with all the requisite solemnities to communicate power and authority to the plaintiff to administer;" thus distinctly recognizing the authority of the orphans courts to revoke letters of administration improperly granted.

It is, however, further urged as a reason why the inquiry attempted in the county court should be permitted, that ad-

mitting the existence of the power of revocation in the orphans courts; yet it may occur that where there are two administrations, upon mutual applications *to* revoke, both courts may overrule such applications, and thus a double administration would be legalized.    To this suggestion the reply is, *that* such an event, though possible, is of improbable occurrence; that should it ever happen by mutual appeals to this court, the corrective would be speedily applied.

In the opinion of the county court then, in the *second* bill of exceptions, we see nothing to complain; nor is there discernible in the *third* bill of exceptions any greater cause of complaint. To show that *Andrew Hammond* survived the testator, *Thomas Hammond*, and thus became capable of taking the property devised to him, on the happening of the contingency mentioned in *Thomas Hammond's* will, the plaintiff offered to prove by a competent witness, that he was well acquainted with the family of *Thomas* and *Andrew Hammond*, and was at their father's, and heard, on the day of the burial of the said *Thomas* and *Andrew*, and at their funeral, that the said *Thomas* died a few hours before the said *Andrew*, and that he heard that fact from the father, (who is now dead,) of said *Thomas* and *Andrew*, and from the sisters of the said *Thomas* and *Andrew*, (one of whom is now dead,) and the other, *Harriet Hammond*, is now living in the city of *Baltimore*.    To the admissibility of which hearsay evidence of the death of said *Andrew* and *Thomas*, the defendant, by her counsel, objected; "but the court were of opinion, that the evidence of the times of the respective deaths of *Thomas Hammond* and *Andrew Hammond*, so far as the information of the witness was derived from the father and sister, who are now dead, is admissible evidence to prove that the said *Andrew Hammond* survived the said *Thomas;*" and with this opinion we entirely concur.    It is objected that the witness having stated that he received the same information from *Harriet Hammond* (a witness within the reach of the process of the court,) that he did from her father and sister, he has thereby shown that there is better evidence attainable than that which was offered; that *Harriet Hammond*, whose testimony the plaintiff might have obtained, was present at the death of her brothers, and if produced could prove who died first.

But neither of those positions are sustainable. It does not appear by the testimony offered, that either the father, *Harriet Hammond*, or her deceased sister, were eye-witnesses of the death of *Thomas* and *Andrew Hammond*, or either of them. For aught that is disclosed by the witness, the father and deceased sister may have been present at the deaths, but not *Harriet Hammond*, her information may have been derived from them, or from some other less authentic source; and this may be the reason why her attendance was not required by the plaintiff. This court, however, wish to be understood as not even giving an intimation that there would be any error in the opinion of the county court, if the testimony offered had shown that the father and both sisters were present at the deaths of *Thomas* and *Andrew Hammond.*

In the *fourth* bill of exceptions, the court having refused the general prayer of the defendant, that the plaintiff was not entitled to recover, the appellant seeks to reverse this opinion on the ground that the limitation over (in the will of *Thomas Hammond,)* to *Andrew Hammond,* in case " *Thomas Hughes Hammond* should die without heir of his body lawfully begotten, or before he shall arrive unto the full age of twenty-one years," operated by way of contingent remainder, and not by way of executory devise. That the words "heir of his body lawfully begotten," were synonimous with the word "issue," was rightly admitted by the counsel on both sides. That the word "or," in the limitation over, must be construed to mean "and," in the place in which it was used; and in all similar limitations, where the effect of construing it disjunctively would be to disinherit the issue of the first devisee, should he die under the age of twenty-one years, has been so repeatedly settled by the most solemn adjudications, that it has become the duty of courts of justice no longer to listen to an argument on the subject, much less to refer to authorities in support of such a position. The words "heir of his body lawfully begotten," in the devise in question, being assumed to mean "issue," and the word "or" to mean "and," that the limitation over to *Andrew Hammond* operates as a good executory devise, ( *Thomas Hughes Hammond* having died under age and without issue,) is so immutably fixed by the recent solemn de-

cisions of this tribunal in the cases of *Dallam v Dallam*, 7 *Harr.* & *Johns.* 220, and *Newton v Griffith*, 1 *Harr.* & *Gill*, 111, that this court did not feel themselves at liberty to permit the point to be discussed before them. Tis true *Dallam v Dallam*, and *Newton v Griffith*, were cases of devises of real estate only, but courts of justice will go much further in supporting executory devises of personal than of real property.

Concurring in opinion with the court below on the several bills of exceptions taken in this cause, we affirm their judgment.

JUDGMENT AFFIRMED.