Peters *vs.* League, *et al.*

*Judgment affirmed.*

(Decided January 28th, 1859.)

## WILLIAM PETERS *vs.* GEORGE B. LEAGUE and ELISHA WINN.

Where an attachment process has been, *in fact*, served on a party, he cannot ask a court of equity to enjoin execution of the judgment of condemnation, upon the ground of *surprise* in obtaining it.

The validity of the judgment, upon which the attachment was issued, cannot be assailed collaterally in a proceeding in equity by the garnishee, to restrain the execution of the judgment of condemnation.

Equity cannot restrain, by injunction, execution of a judgment of condemnation, upon the ground, that the garnishee was *privileged* from *service* of the attachment, because of his being a member of one of the councils of the city of Baltimore, and in the actual discharge of his duties as such, at the time the writ was served on him.

Service of process upon a privileged person is not *void*, but a mere *irregularity*, which may be waived by a trial or confession of judgment; the privilege must be claimed by plea or motion in the particular case, made at the proper time.

Nor is service of process *avoided* by privilege in respect to the *place* where it was served.

APPEAL from the Circuit Court for Baltimore City.

Bill by the appellant, against the appellees, for an injunction to restrain the execution of a judgment of condemnation, which George B. League, one of the appellees, had obtained against the complainant, as garnishee of Luke League.

The bill states, that League having, or pretending to have, obtained a judgment against his brother, Luke League, caused an attachment thereon to be issued, by a justice of the peace, directed to Madison Jeffers, a constable, who returned the same as laid in the hands of —— Peters, as garnishee, and a judgment of condemnation was thereupon rendered, by the magistrate, against complainant, without his knowledge, on which League has caused a *fi. fa.* to be issued, directed to the defendant, Winn, as constable, who has levied the same upon complainant's property. The bill charges, that the attachment never was, in fact, served on the complainant, or laid in his hands, and that he never had any notice thereof, and that the return thereto is utterly and totally false, and if he had had proper notice and lawful service of the writ, and proper and lawful occasion to appear thereto and defend himself, he could have shown, that neither at the time the writ issued, nor at any time since, had he any property or credits of Luke League in his hands. He avers, that on an afternoon, in the past winter, during one of the sessions of the City Council of Baltimore, of which he was a member, Jeffers came into the council chamber, where he was busily engaged in the discharge of his public duty, and about to reply to some remarks then being made in debate, and approaching him ob-

served: "I have a writ for you," or words to that effect, to which he replied: "This is not the place to serve it, my place of business is on Pratt street, where you will always find me," or words to that import; whereupon Jeffers, without giving him any idea of what the purport or character of the writ was, left the chamber, he supposing Jeffers would call next day, as requested, to serve the writ, but he never did so call, and never did then, or at any other time, inform complainant of the character of the writ, where, when, or before whom it was to be answered, or at whose suit it had been issued, so that he remained utterly ignorant thereof, and of the return thereto, and proceedings thereunder, and never knew of the existence of the alleged attachment, or of the pretence that it had been laid in his hands, until after the judgment of condemnation had been rendered, and after it was too late for him to have remedy by appeal, as provided by law. He charges that the return was false and fraudulent, the condemnation fraudulently procured, and all knowledge of the same fraudulently concealed from him until the time for appeal had gone by; and that the *fi. fa.* thereon was fraudulently sued out, when too late for appeal, with the covinous intent to extort from him money which he did not and does not owe.

The injunction was issued, and after answers denying the allegations of the bill, testimony was taken, and Jeffers, the constable, proved that some time previous to laying the attachment, he received a note of hand from the attorney of George B. League, drawn by Luke League, with orders to issue warrant, that the issue was made by a justice of the peace, served within the return day, and regularly returned to the justice; that some short time afterwards, an attachment was ordered upon a judgment which had been rendered against Luke League, in favor of George B. League, and issued by the same justice, and put in witness' hands with orders to lay it in the hands of complainant; witness called at his place of business, and not finding him there, told the clerk he wanted to lay an attachment in his (complainant's) hands, to bind money of Luke League, and the clerk directed witness to the council chamber, where he proceeded for the purpose of serv-

ing this attachment, found complainant occupying the first seat on the left upon entering the chamber, took a seat immediately behind him, outside the bar, told him the object of his visit, and handed him the attachment to read, and complainant read it, took a memorandum of the return day, and said he would attend to it; after which, witness called the attention of two witnesses to it, and made return of the attachment to the justice, as having been served in the presence of these witnesses. The council was in session and transacting business at the time, but witness has no recollection of speech-making or resolutions being offered; complainant made no objection to the writ, but said at the time he did not owe Luke League anything, to which witness replied he had nothing to do with it, that he (complainant) would have to come and answer on oath.

The court (KREBS, J.,) dissolved the injunction and dismissed the bill, and from this decree the complainant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*T. Yates Walsh* for the appellant:

1st. The testimony of Jeffers shows, that the defendant, League, and Jeffers commenced their proceedings in the premises by an enterprise against the law, for the Act of 1821, ch. 249, sec. 3, provides, that no justice of the peace "shall issue a warrant for debt, except on the application of the plaintiff or plaintiffs in person, or of his, her or their agent or attorney, thereunto authorised, *other than a constable,*" and the proof shows, that Jeffers gave the order in this case, to issue the warrant on the original cause of action against Luke League. Besides this, there is no proof in the record of the existence of any such judgment upon which the attachment could issue.

2nd. The averments of the bill as to fraud and surprise are fully sustained. The judgment of condemnation was entered up, and permitted to lie in the office of the justice, until the time for appeal had passed by, and the writ of *fi. fa.* was then issued to *another constable.* There is no proof in the

record of any indebtedness, on the part of the complainant, to Luke League, but on the contrary the proof is, that League was the complainant's debtor. By the Act of 1789, ch. 9, sec. 6, a power is recognized in the courts to set aside judgments "for fraud, deceit, surprise or irregularity in obtaining the same," und there is no limit of time for the exercise of this power. *Ev. Pr.,* 339. 8 *Md. Rep.* 50, *Frazier vs. Griffie.*

3rd. The testimony of Jeffers proves, that what he calls a *service* of the attachment, was a most outrageous intrusion in and interference with a legislative body. There was no valid service of the writ. Unless society is to be governed by the laws of disorder, his proceedings in the Council Chamber were a nullity. The error in the argument on the other side is, that the complainant's acquiescence heals everything—a great mistake. It was not the complainant's privilege to be exempted from disturbance while in the discharge of legislative duties, but it was the *public right.* The city councils are *quasi* sovereigns—they are officers of the government for the administration or discharge of *public duties,* and when exercising those duties, any member is as much exempt from arrest or service of process, as members of Parliament or the Legislature. 8 *Md. Rep.,* 95, *Mayor & City Council of Balto. vs. Root.* If there was no *valid* service, then the complainant had no notice, as averred in his bill, and a court of equity ought to interfere to restrain execution of the judgment.

*Llewellin F. Barry* for the appellees :

1st. The defence set up by the appellant, that he was a member of the City Council at the time of laying the attachment, is not a good one, inasmuch as he, of his own will, made the council chamber a place of business, inviting, through his authorized agent, the officer to go there to lay this attachment, and when laid, promised to attend to it. If it was wrong he cannot take advantage of his own wrong.

2nd. If the defence were a good one, he should have appeared and set it up at the magistrate's court, or on appeal in the Court of Common Pleas, and not treat with contempt any

Peters *vs.* League, *et al.*

of the courts of law. Besides this there is no equity disclosed in the testimony in his favor.

TUCK, J., delivered the opinion of this court.

The evidence shows, that the process of attachment was, in fact, served on the appellant; there is therefore no jurisdiction for enjoining the execution, on the ground of surprise, in obtaining the judgment of condemnation. He might have made all proper defences before the justice of the peace.

We cannot, on this appeal, inquire into the authority of the justice who issued the warrant against Luke League, on which the judgment was rendered against him; and which is said to have been the basis of the attachment laid in the hands of the appellant. The validity of that judgment cannot be assailed collaterally in the present proceeding.

It is supposed, that the appellant was privileged from the service of the attachment; and especially while in the actual discharge of his duties as a member of one of the councils of Baltimore. If this be admitted, it will not follow that the party can obtain relief in the way proposed. Service of process on a privileged person is not void; it is treated as an irregularity, even in cases where, under the process, a party may be held to bail. It may be waived by a trial or confession of judgment; and this shows that it does not avoid the proceedings, for what is a nullity cannot be cured. There are many cases in which the exemption has been claimed by plea, or motion, in the particular case; but none, as far as we are informed, where equity has interfered by injunction. In *Prentis vs. Commonwealth,* 5 *Rand.,* 697, where the subject was examined with care, on the application of a member of the Legislature, it is said: "We are satisfied that the courts may not, *ex officio,* take notice of the existence of the privilege. It results, from its nature and character, that it may be waived, and therefore ought to be claimed whenever relied on. The judicial history of the question does not furnish an example of the allowance of the privilege, but upon plea, or upon motion, tendered or made, at the period proper for the consideration thereof by the court, whose proceedings are sought

to be abated or suspended." ※ ※ ※ ※ "The proof of the facts upon which it rests, are easy of attainment, because they are few, and may be adduced, as well in the absence, as in the presence of the party." We consider this decision altogether consistent with the authorities upon the subject:

It is worthy of remark, that Peers and members of Parliament were liable at common law to be sued though they could not be arrested on writs of *capias*. Here the process was an attachment, with a summons to the party as garnishee; therefore the supposed analogy between members of the Baltimore City Councils and of Parliament would not aid the appellant:

If there was privilege in respect to the place, the service was not thereby avoided, whatever penalties the officer might have incurred by his alleged contempt, if the body had thought proper to vindicate its dignity against such intrusion. See 3 *Bl. Com.*, 289. *Sewell on Shffs.*, 133, (46 *Law Lib.*) 1 *Sell. Pr.*, 58. *Fortnam vs. Rokeby*, 4 *Taunt.*, 668. *Bouv: Bac. Abr. Privilege, C. 5.* 1 *Tidd's Pr. Ch.*, 6, 136, 217. *Macnamara on Nullities*, 6, 64. *Bartlett vs. Hebbes*, 5 *Term Rep.*, 686.

*Decree affirmed, with costs.*

(Decided February 8th, 1859.)