John C. Groome, Administrator of Jacob Keck, deceased, and John V. Herriott, vs. John Lewis.

Attachment—Proceeds of Sale of Real Estate in Hands of Trustees when Liable to: Defence of no Account Stated and Ratified, when Available: Pleading: Evidence.—The general rule, that funds in the hands of a trustee in equity are not liable to attachment and condemnation before the statement and ratification of a final account, appears to rest altogether on jurisdictional considerations sufficient for the defence of a trustee as garnishee, as well as for the protection of the funds in his hands from condemnation; but it is manifest that these are purely matters of defence of which the trustee should avail himself by motion, pleadings or proof at some stage of the attachment proceeding before final judgment.

It is not, however, necessary that a trustee should plead such matters specially, but they should be so disclosed that the Court having jurisdiction of the attachment may take notice of them before the cause is concluded by a judgment.

Where, in proceedings in attachment, there was nothing to show that the garnishee made any defence whatever, but assented to the judgments of condemnation, those judgments, like others pronounced by Courts of competent jurisdiction, must be respected as final and conclusive on the rights ascertained and established by them.

The fact that the garnishee had a good defence, or that he was clothed with a privilege sufficient to protect him from liability to the attaching creditors, cannot be inquired into here for the purpose of setting aside the judgments or releasing him from their proper legal effect.

The general rule, above cited, is not a device for the benefit of debtors, nor can it be said to contemplate in any way the protection of their interests in trust funds from the appropriate remedies of their creditors, nor can they derive any incidental advantage from the rule, except in cases where the existing facts or circumstances are such as to justify its application; the rule cannot be applied after there has been a final account, and an order to the trustee to pay accordingly.

It cannot be doubted that an attachment laid in the hands of a trustee before a final account would be good, if at any time before trial or judgment the share of the fund in hand, belonging to the debtor, is ascertained by a final account.

Attachment—When Taking Effect.—The process of attachment, certainly when pursuing credits, unlike ordinary suits, does not necessarily relate back to the impetration or service of the writ as to the time of taking effect, but may stand on the state of fact appearing at the trial; and there is no appreciable reason why the issuing and laying of the attachment before an account stated, should afterwards bar a condemnation of the fund when the account has been stated and ratified.

Groome, Adm'r of Keck, *et al., vs.* Lewis.

JUDGMENT OF CONDEMNATION, WHEN FINAL AND EFFECTIVE AS TO FUNDS IN HANDS OF TRUSTEE.—If an attachment may be laid in the hands of a trustee before a final account, upon which a fund thereby ascertained may be afterwards condemned, with equal reason a judgment entered before the account is stated would be final and effective on the fund afterwards ascertained, if before that time no motion nor other proceeding has been interposed or taken to correct the irregularity in the entry of the judgment.

The ascertainment of the specific fund upon which the judgment takes effect, cures the irregularity of entering it before the final account, and presents a case where the ground of objection has ceased to exist, and would not avail for any purpose if the attachment were still pending.

Even if the previously existing irregularity were properly subject to correction on a motion to strike out, the attaching creditor could have the case brought up by regular continuances, and demand a condemnation of the fund shown to be in the hands of the trustee by the final account.

The result, however, is altogether different, when, upon a full disclosure of the condition of the trust fund, the prosecution of an attachment, laid in the hands of a trustee, results in a judgment adverse to the attaching creditor before a final account; for there the failure to obtain a judgment of condemnation is an entire failure of the remedy.

APPEAL from the Equity Side of the Circuit Court for Cecil county.

This is an appeal from an order of the Circuit Court for Cecil county, sitting as a Court of Equity, granting the application of the appellee for an order directing the trustee to pay over to him the share of the net proceeds of certain real estate sold under a decree of said Court, which had been awarded to him by the final account of the auditor, duly reported and ratified by the Court. The facts of the case are briefly stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, COCHRAN and WEISEL, J.

*Ezekiel F. Chambers and J. A. J. Creswell,* for the appellants:

1st. As to the appellee's ignorance or want of knowledge of the existence or pendency of the attachments. The laws regulating attachments, no where recognize the de-

fendant debtor's right to be informed of them. They assume that the debtor resides out of the State, or that he has absconded to elude the payment of his debt, and the remedy is given for the very reason, that he cannot be served with notice. It is a proceeding not so much against the person as against the property of the defendant. There is no pretence that there was any fraud in the cases; and if there were, or if want of notice were a valid objection, the appellee could not avail himself of it, under the circumstances of this case, where the judgments come incidentally in question. The objection, if valid, could only avail in proceedings directly instituted in Chancery, for the express purpose of setting them aside for those causes, for "if any principle is settled," says this Court, "it is, that the authority of a Court of competent jurisdiction, when coming incidentally in question, is conclusive of the matter decided, and cannot be impeached on the ground of informality in the proceedings, or mistake or error in the matter on which they have adjudicated. *Powles vs. Dilley*, 9 *Gill's Rep.*, 241. *Raborg vs. Hammond*, 2 *H. & G.*, 50. But we will discuss this subject of the conclusiveness of judgments, when incidentally in question, more fully when we come to consider the third point. If, however, there were any force in this objection, and it might be legitimately weighed by the Court, it has no existence in fact, as the record and proof shew that the appellee was represented in the attachments by Messrs. McCullough and Mackall, who appeared for him. "It is not the practice in this State to require a warrant of attorney to authorize the appearance of a defendant by attorney." "But the party may, by the law and practice of the Courts of this State, appear either in *propria persona* or by attorney, and wherever the appearance of an attorney is entered on the record, it is always considered, that it is by the authority of the party, and whatever is done in the progress of the cause by such attorney, is considered as done by the party, and binding on him, and whether the attorney is faithful to his trust or

not, is a matter between him and the party, his client, to whom he is responsible for the faithful discharge of his duty." *Henck vs. Todhunter & al.*, 7*th H. & J.*, 277, 278. Again, "the appearance of an attorney without proof of an authority derived from the defendant, does not, *per se*, invalidate a judgment. If loss or injury be sustained thereby, the attorney must answer in a civil action by the party injured." *Munnikuyson vs. Dorsett*, 2 *H. & G.*, 378. So in the case of *Fowler vs. Lee*, 10 *G. & J.*, 363, the same principle is re-affirmed with stronger emphasis, where it is said that "an attorney may, without instructions, have entered a voluntary appearance upon a *non est*, or appeared to a writ thus returned and confessed a judgment without being guilty of fraud; or solely on the ground of such misconduct subjecting the judgment to impeachment in a Court of Equity." Here the Court go so far as to suppose that the defendant had been returned *non est*, had received no notice of the suit, though he was entitled in the case to such notice, and yet binds him by the acts of the attorney, who has voluntarily and without instructions appeared for him. This is carrying the point even further than we are contending for. Here the defendant was not entitled to notice of the suit, it was predicated of the improbability of his being where he could be served with notice, and of his absence from the State, and there the Court, in denying the right of a Court of Equity to impeach a judgment for that cause, had reference to proceedings instituted therein for that express purpose, and not, as in this case, to proceedings in equity, where the judgments came up incidentally or collaterally. We think, therefore, that there is nothing in this point.

2nd. As to the nullity of the judgments,—which seems to have determined the mind of the equity Judge to reject their payment. The learned Judge, in giving his reasons, after allowing the judgment of John Dialoque to be paid, says: "In the other cases (those of the appellants) the judgments of condemnation having been entered before th'

final confirmation of the auditor's report, were condemnations over which the Court of Law had no jurisdiction at that time, and on the authority of what was said by the Court of Appeals, in *Albert & Wife, vs. Winn & Ross,* 7 *Gill,* 486, I think may and ought to be treated as nullities.'' Now it seems to us, that the inference he has drawn from the above case, is clearly illogical. The facts and circumstances of the two cases are very dissimilar. There the Court of Baltimore County, in equity, assumed to take jurisdiction of the matter, at the instance of parties who were already defendants in a suit instituted upon the same estate, and the same matter in the Court of Chancery, a tribunal fully competent to grant them such relief as they were entitled to, thereby interfering with an injunction already granted by the Court of Chancery, and coming directly in conflict with its jurisdiction. The Court held, that ''the proceedings in the Court of Chancery must be regarded as the commencement of the controversy, and that it drew to the Court of Chancery the whole litigation, in regard to the distribution of'' the particular estate involved, ''more especially as the injunction there was intended to prevent Albert and wife from securing to themselves a preference in any way, and their resort to another tribunal, designed or not, was under the circumstances, a disregard of the Chancellor's injunction,'' and ''in substance and effect, it amounted to an evasion of that injunction.'' This case, as to this point, has merely confirmed a principle which was indeed settled before by the Court of Appeals, that where two Courts have concurrent jurisdiction over the same subject matter, the Court in which the suit is first commenced is entitled to retain it, to prevent collision and conflict. It was so ruled in *Brown vs. Wallace,* 4 *G. & J.,* 509, where the Court say : ''Tis true both Courts in ordinary cases have authority to grant injunctions, but where a suit has been commenced in one, it ought to be entitled to retain it.'' Now this is not a case where two Courts have a concurrent jurisdiction, and there is a conflict between them,

or where the Court, competent to afford the relief sought, has taken cognizance of a subject matter, with which another Court has attempted to interfere. The Circuit Court as a Law Court, has full, and where the claim exceeds $100, exclusive jurisdiction, of attachments by warrant. It was not competent for the Court of Chancery to afford to the appellants the relief they sought and obtained by the attachments. Their remedy was at law to establish their claims, and an application from them, as general creditors of Lewis, to have their debts paid out of the funds in the Court of Equity, would have been instantly and properly rejected by the Court. It was necessary for them to show some lien or special claim upon the fund, or upon the property from the sale of which the fund arose, to entitle them to claim payment out of it. To establish this lien or special claim, was the object and intended office of the attachments. It was to give the Court of Equity a jurisdiction over the appellants' claims, and not conflict with any jurisdiction that it could legitimately exercise, that the attachments were issued. So that the opinion expressed by the learned Judge finds no support from the reasoning or decision of the Court, in the case of *Albert & Wife vs. Winn & Ross.* But the learned Judge relied also upon what is said by this Court in the case of *Cockey vs. Leister*, 12 *Md. Rep.*, 129; that "an attachment will not lie to affect trust funds in the hands of a trustee in equity." This abstract proposition we are not disposed to deny, nor need we discuss the question, whether if it had been applied to the attachments of the appellants at the proper time, in the proper way and before the proper tribunal, it would have defeated them. It was not so applied, or, if applied, was overlooked or disregarded. Besides, it is very clear that the Court, in giving that decision, had in view the protection of the trustee from the annoyance of a multiplicity of suits and the Court of Equity from trouble, but it does not thence follow, nor is it any where intimated by the Court, that a judgment condemning such funds, where the defence had not been

made on plea or motion, would be void. Certain persons are privileged from arrest—but Courts are not required *ex-officio* to take notice of the existence of the privilege, it must be done upon plea or upon motion, tendered or made at the proper period, for the consideration thereof by the Courts, whose proceedings are sought to be abated or suspended." If this should be neglected, and a judgment rendered against such persons, it is binding and cannot be annulled for that cause. *Prentiss vs. Commonwealth,* 5 *Rand.,* 697. So we presume the law is in this case. If the point were presented at the proper time it might be fatal, but the Court cannot be required to take notice of it *ex-officio,* and and after judgment has been rendered, there is no redress. See *Peters vs. League,* 13 *Md. Rep.,* 634. What we have to say is, that the decision in the case of *Cockey vs. Leister,* does not apply here. We are not in a law Court trying the effect of an attachment in condemnation of a fund in the hands of a trustee in equity, where a plea of that fact might or would be fatal to a recovery, but we are exhibiting, for the purpose of showing our title to a share of that fund, judgments of a Court of competent jurisdiction—aye, having the exclusive right to entertain attachments—condemning absolutely a part of that fund for our use. Now we say that these judgments, until reversed on appeal or writ of error, (and the appellee had abundant time after he had notice of them to take an appeal or file his writ of error,) are conclusive upon everybody, and that presented, as here, incidentally in proof of title, cannot be legally set aside by a Circuit Court sitting in equity; and where there is no pretence or allegation, as in this case, that by reason of the rendition of them, the appellee has been rendered liable for the payment of a debt, which, *ex æquo et bono,* he is not bound to pay, they ought not to be disturbed. It has again and again been decided by this Court, "that Courts of Chancery do not lightly interfere with judgments at law. It is only for the prevention of fraud, or to relieve from substantial injury or gross injustice, that its high and

extraordinary power of injunction is ever resorted to. It is never exerted merely for the correction of informalities, or irregularities, on legal or judicial proceedings," and this where the application is direct to the Court of Chancery, and not where the judgment comes up incidentally. "He who seeks to avail himself of such defects, must prosecute his remedies at law—(and here, even after judgment, the appellee could have had an appeal or writ of error)—from a Court of Equity he can receive no countenance. A Court of Chancery, too, looks well to the consequences of its acts, and the case must indeed be a strong one, which would induce it to nullify a judgment at law; and then, as here, put it in the power of a debtor to plead the statute of limitations to a debt which he does not deny to be justly due." *Fowler vs. Lee,* 10 *G. & J.,* 363, 364.

Now apply these principles to the case before the Court. Here there is no fraud alleged, no substantial injury or gross injustice pretended—no denial of the justness of the debts, (and there could have been none, for one was on bond, and the other on a judgment of the Superior Court of the city of Philadelphia,) no assertion that he has been deprived of the opportunity of making a meritorious defence, or that if the judgments were now opened he has any defence at all to make—or even that the appellants have in any way interrupted or interfered with the quiet disposition of the trust funds, or embarrassed the trustee or the Court in regard to them. But the appellee's resistance is based upon an abstract proposition, of which he has failed to avail himself at the proper time, and he expects the Court to aid him, for technical reasons, in defeating the payment of an honest debt. Again, in *Windwart vs. Allen,* 13 *Md. Rep.,* 200, "Courts of Chancery do not lightly interfere with judgments at law, and relief will not be granted if the party has had an opportunity of making his defence;" and this was where the validity of the judgments was directly called in question by a bill filed by the defendant at law for an injunction to restrain execution of two writs of *fi. fa.*

issued upon two judgments of condemnation in attachments obtained against him, as garnishee, before a justice of the peace, and where the defendant at law had actually paid the notes given for the debt attached, to persons to whom they had been endorsed by the plaintiff at law, which is a much stronger case than this, and shows how far this Court has gone to sustain the validity of judgments rendered by tribunals having proper jurisdiction, even when directly impeached. Here the appellee does not pretend that the appellants' debts were unjust or have been paid, and here the judgments came up incidentally in proof of title. Again, in *Prather vs. Prather*, this Court said: "The defence set up by bill could have been clearly available at law, and if the party has suffered a judgment by default to be entered against him, without a resort to such defence, a Court of Equity can furnish him with no redress, where it does not appear that he was prevented from taking such defence by fraud, accident, or the conduct of the opposite party." 11 *G. & J.*, 113. See *Munnikuyson vs. Dorsett*, 2 *H. & G.*, 378, that "judgments at law are not lightly to be interfered with."

But it is not for the reason merely that Courts of Chancery, where their extraordinary powers are directly invoked, do not lightly interfere with judgments at law, that we defend the appellants' claim to a judgment of reversal, but we plant ourselves upon the broad principle settled by numerous decisions of this Court, that judgments at law, when they come up incidentally, cannot be impeached, but are conclusive. The case of *Raborg vs. Hammond*, 2 *H. & G.*, 50, and *Powles vs. Dilley, et al.*, 9 *Gill*, 241, hereinbefore referred to in the argument of the second point, go directly to this point. In both cases the Court said: "That if there be any principle in law, in this State, unalterably fixed by authority, it is this: that the judgment of a Court of competent jurisdiction, when coming incidentally in question or offered in evidence of title in any other Court, is conclusive upon the question decided, and cannot be impeached on

Groome, Adm'r of Keck, *et al.*, *vs.* Lewis.

the ground of informality in the proceedings, or error or mistake of the Court in the matter on which they have adjudicated." What more need we to support our claim, to have a portion of the trust fund appropriated to the appellants, than these decisions afford? They suit our case precisely.

The appellants claimed to have a part of the appellee's share of certain trust funds applied to them, on the ground that the appellee's interest therein had been condemned for their use, to certain amounts, by attachments in a Court of competent jurisdiction, and as evidence of their claim or title, they exhibit the judgments of condemnation, and prove, besides, (though we contend it was not necessary to do so,) by papers offered in evidence by the appellee, himself, and by the direct testimony of a disinterested witness, that the trust fund was the very fund condemned by the judgments. Now, in this state of facts, and in the face of the two preceding authorities, how can the decree or order passed by the Circuit Court of Cecil county, in chancery, be sustained? How could the Court look behind them and set them aside as nullities? because if properly resisted at the proper time, they might never have been obtained as against the trust fund; they not being assailable on the ground of any error or mistake of the Court in the matter which has been adjudicated. See, also, to the same point, *Ranoul vs. Griffie*, 3 *Md. Rep.*, 54. *Barney vs. Patterson*, 6 *H. & J.*, 182. *Peters vs. League*, 13 *Md. Rep.*, 63. The same principle is applicable to the judgments of attachments in foreign Courts of competent jurisdiction, when they come incidentally in question. *Taylor & McNeal, vs. Phelps*, 1 *H. & G.*, 492. It has also been settled, that with regard to the force and legal effect to be attributed to a domestic judgment pronounced by a Court of competent jurisdiction, "there is no distinction between a judgment of condemnation rendered in an attachment on warrant, and a judgment *in personam*. They stand upon the same principle, they both import absolute verity, are equally conclusive with

respect to the subject matter adjudicated, and cannot be re-examined or impeached in any collateral proceeding." *Gordon's Ex'r vs. Mayor, &c. of Balt.*, 5 *Gill*, 242.

And if the judgments were examinable in this collateral way, ought not every fact and circumstance, necessary to give them validity, be inferred, particularly when the effect of setting them aside upon a mere technical consideration, would be to aid the party in committing a gross fraud, by depriving his creditors of their just debts, particularly if Courts of Equity, as said in *Fowler vs. Lee*, 10 *G. & J.*, 364, look well to the consequences of their acts, and would require a strong case to induce them to nullify a judgment at law, and put it in the power, as here, of the debtor to defeat the recovery of honest debts; and further, where the law (1831, ch. 321) authorizes a plaintiff in attachment to have the same laid upon debts due to the defendant upon judgments or decrees rendered or passed by any Courts of Law or Equity in the State, and to have judgment of con-demnation thereof as upon any other debts due said defend-ant? We do not, therefore, think that the action of the Circuit Court for Cecil county, in equity, from which we have taken this appeal, can receive the sanction of this Court on the first matter from which we have appealed.

As to the second matter of appeal, we think the Court was clearly wrong in ordering the residue of the appellee's share of the trust money, after retaining barely the amount then claimed, to be paid to him, without reserving any part for the payment of future interest on our claims, if we should recover, or the costs, which this Court might award. It was the duty of the Court to retain the whole fund until there could be a final adjustment of the whole matter in controversy, and justice could be administered to all.

*H. W. Archer*, for the appellee:

1st. Except so far as the judgments upon the attach-ments, as proceedings *in rem*, may be held to have given a lien upon funds in the hands of the garnishee, and liable

to attachment, there is no evidence of any indebtedness by Lewis to the appellants, and they have no claim in equity beyond the strict rights they may have acquired by the attachment.

2nd. The judgments upon the attachments are *not valid* to effect the funds in this case, claimed by the appellee; because, *prima facie*, said judgments were not laid upon this fund. And, in point of fact, the money was not in the hands of the garnishee when the attachments were issued, nor until after the rendition of the judgments.

3rd. The case of *Earle vs. Lewis*, in Chancery, was a proceeding *in rem*, and the funds claimed to have been attached by the appellants, was money in the custody and under the control of the Court of Chancery, not disposed of by that Court, and not liable to attachment. *Farmers Bk. of Md. vs. Beaston*, 7 *G. & J.*, 421. *Cockey vs. Leister*, 12 *Md. Rep.*, 129. *Bentley vs. Shreive*, 4 *Md. Ch. Dec.*, 413. *McPherson vs. Snowden*, 19 *Md. Rep.*, 233.

4th. It was the duty of the garnishee to have pleaded *nulla bona*, and if, without making defense, he has suffered judgments of condemnation to go against him when he had no funds in his hands, or no funds liable to attachments, the defendant's claim is not prejudiced thereby.

5th. The Circuit Court for Cecil county, as a Court of Law, had no jurisdiction over the funds under the control of the Chancery Court, to attach or condemn the same, and the judgments on the attachments, as against the funds in controversy in this case, are void and of no effect. *Albert vs. Ross & Winn*, 7 *Gill;* 486. *Clark vs. Bryan*, 16 *Md. Rep.*, 171, 177. *Towns vs. Springer, et al.*, 9 *Ga. R.*, 130. *Mobley, et al., vs. Mobley*, *Id.*, 247. *Cent. Bk. of Ga., vs. Gibson*, 11 *Id.*, 453.

6th. It is the appellants, and not the appellee, who attack the judgment collaterally. To make out their present case, they want to prove a fact not apparent in the judgments, (that it was the trust fund that was attached,) which, if true, proves that the attachments, and the judgments rendered thereon, are void for want of consideration.

COCHRAN, J., delivered the opinion of this Court:

The question to be considered in this case, arises on the following facts: A sale of certain real estate was made by George Earle, as trustee, under a decree passed by the Court below, on a bill filed by Sarah C. Earle against the appellee and one Edward J. Cannon. The proceeds of sale, to which in part the appellee was entitled, were duly reported for distribution, but before his share was ascertained by the statement and ratification of the final account, the appellants, being his creditors, sued out attachments for the amount of their respective claims, and caused them to be laid in the hands of Mr. Earle, the trustee. Counsel, professing to act for the appellee, and for the protection of his interest in the fund derived from the sale, entered their appearance for the garnishee, and after continuing the cases for several terms, consented to judgments of condemnation. The amount allowed the appellee by the account was $1,622.06; and in his proceedings taken to compel the trustee to apply the proceeds of sale as directed by the final order of ratification, he assumes that this sum should be paid to him regardless of the claims of the appellants on their judgments of condemnation. At the hearing below, the Court, holding that he was entitled to the fund, passed a decree directing its payment, and in reviewing that decree, we are required to determine whether the fund is within the operation and effect of these judgments. This question is an important one, and not altogether free from difficulty.

The appellee, to establish an exclusive right in himself to the sum allowed by the account, notwithstanding the judgments, relies on the general rule, that funds in the hands of a trustee in equity are not liable to attachment and condemnation before the statement and ratification of a final account. The appellants, on the contrary, contend that this rule does not apply in this case, and that it cannot be invoked in this proceeding for the purpose of relieving the fund in question from the operation and effect of their judgments. The reasons assigned for the rule, in the

reported cases, unquestionably indicate, if they do not expressly prescribe, the time and circumstances when, and under which, it should be asserted, and a brief notice of them in that connection would seem to be appropriate here. The question was considered in the case of *Cockey vs. Leister*, 12 *Md. Rep.*, 124, where, on the authority of the cases of the *Farmers Bank of Del. vs. Beaston*, 7 *G. & J.*, 421, and *Bentley vs. Shrieve*, 4 *Md. Ch. Dec.*, 412, the Court said, that an attachment would not lie to affect funds in the hands of a trustee in equity before an order of distribution on a final account; 1st, because the power of the Court over the fund is such as to suspend the privilege under the attachment laws, to which the trustee, as garnishee, would otherwise be entitled, of confessing judgment for the amount in hand, with an allowance of his costs therefrom, and also prevent him from responding to a judgment of condemnation except out of his own estate; and 2nd, because the interference by the process of one Court with funds in the custody of another, would result in confusion and conflict of jurisdiction.

The rule insisted on thus appears to rest altogether on jurisdictional considerations, sufficient for the defence of a trustee as garnishee, as well as for the protection of funds in his hands from condemnation; but it is manifest from the nature of the case, whether we look to the jurisdiction to which the fund is subject, or the resulting privilege of the trustee holding it, that these are purely matters of defence, of which the trustee should avail himself, by motion, pleadings or proof, at some stage of the attachment proceeding before the final judgment. He is not, however, required to plead these facts specially, either for his own protection or that of the fund in his hands, but they should be so disclosed that the Court having jurisdiction of the attachment may take notice of them before the cause is concluded by a judgment. But does this record show any such state of case? On the contrary, there is nothing in these proceedings to show that the garnishee made any defence whatever,

or that the counsel who appeared for him in the interest of the appellee, and assented to the judgments of condemnation, made any; nor do the extracts from the records of the attachment cases, produced by the appellants as the foundation of their claims to this fund, disclose any fact in regard to its character or condition, nor of the garnishee's relation to it, upon which error in the judgments can be predicated. Even if it were otherwise, the period, within which errors could have been assigned or irregularities corrected, has passed long since, and these judgments, like others pronounced by Courts of competent jurisdiction, must be respected as final and conclusive on the rights ascertained and established by them. The fact that the garnishee had a good defence, or that he was clothed with a privilege sufficient to protect him from liability to the attaching creditors, cannot be inquired into here, for the purpose of setting aside the judgments, or releasing him from their proper legal effect. *Raborg vs. Hammond,* 2 *H. & G.,* 42. *Powles vs. Dilley,* 9 *Gill,* 222. *Prather vs. Prather,* 11 *G. & J.,* 110. *Peters vs. League,* 13 *Md. Rep.,* 58. *Boyd vs. Ches. & Ohio Canal Co.,* 17 *Md. Rep.,* 195. But it is said that these judgments, even if binding on the garnishee, do not affect the fund in dispute, and, to that extent, that they should be treated as nullities, under the rule relied on by the appellee. This proposition, if true in this case, unquestionably gives a more comprehensive operation to the rule than the reasons on which it is founded would seem to justify.

So far as we can understand, it is not a device for the benefit of debtors, nor can it be said to contemplate in any way, the protection of their interests in trust funds from the appropriate remedies of their creditors, nor can they derive any incidental advantage from the rule, except in cases where the existing facts or circumstances are such as to justify its application; and the rule cannot be applied, as was said in *Cockey vs. Leister,* after there has been a final account, and an order to the trustee to pay accordingly.

The theory of the appellee would thus seem to be untenable, for the state of facts upon which the rule might have been availed of, no longer exists. His share of the fund arising from the sale of the real estate, was ascertained by a final account long before he filed his petition against the trustee for its payment to him; and, as he no where denies his indebtedness to the appellants, nor pretends that he has been deprived of any real defence to their claims, it is neither reasonable nor just that he should have the benefit of an objection to their judgments which could not be made if the cases in which they were entered were still open. .

But trying the objection by a more accurate test, we find that it does not go to the issue and service of the writs, but simply to the judgments; and that, indeed, is as far as the objection could go, consistently with the views expressed in the case of *McPherson vs. Snowden*, 19 *Md. Rep.*, 197. After reviewing the cases of *The Farmers Bank of Del. vs. Beaston; Bentley vs. Shrieve;* and *Cockey vs. Leister*, this Court said, that they did not understand from them that an attachment could not be issued and laid in the hands of a trustee before a final account; but that it would not be effective—that is, would not subject the fund to condemnation before that time.

It surely cannot be doubted that an attachment laid in the hands of a trustee before a final account, would be good, if, at any time before trial or judgment, the share of the fund in hand belonging to the debtor is ascertained by a final account. This process, certainly when pursuing credits, unlike ordinary suits, does not necessarily relate back to the impetration or service of the writ as the time of taking effect, but may stand on the state of fact appearing at the time; and, in the case supposed, the account would enable the trustee to confess the amount in hand, as well as respond to a judgment of condemnation, without prejudice to himself or contempt of the jurisdiction to which the fund had been subject; and we can discover no appreciable reason why the issue and laying of the attachment

before an account is stated, should afterwards bar a condemnation of the fund. And if an attachment may be laid in the hands of a trustee before a final account, upon which a fund thereby ascertained may afterwards be condemned, we may conclude with equal reason that a judgment entered before the account is stated, would be final and effective on the fund afterwards ascertained, if before that time no motion nor other proceeding has been interposed or taken to correct that irregularity in the entry of the judgment. The ascertainment of the specific fund, upon which the judgment takes effect, cures the irregularity of entering it before the final account, and presents a case where the ground of objection has ceased to exist, and would not avail for any purpose, if the attachment were still pending. Even if the previously existing irregularity were properly subject to correction on a motion to strike out, the attaching creditor could have the case brought up by regular continuances, and demand a condemnation of the fund shown to be in the hands of the trustee by the final account. The result, however, is altogether different when, upon a full disclosure of the condition of the trust fund, the prosecution of an attachment laid in the hands of a trustee results in a judgment adverse to the attaching creditor before a final account; for there the failure to obtain a judgment of condemnation, is an entire failure of the remedy.

The most, therefore, that can be said of these judgments, is, that if the matter of defence suggested here had been relied on at the proper time, their entry would have been irregular; but it does not follow, as we have seen, that they should now be treated as nullities for any of the purposes of these proceedings. There was no effort to correct them while they were subject to objection on the ground of the alleged irregularity, and, so far as this record shows, no equitable reason has been assigned, nor is it pretended that any exists, for denying to them the absolute and conclusive effect of final judgments.

We think, upon a full and careful consideration of the whole case, that the fund in dispute is subject to the appellant's judgments, and that they are entitled to have it appropriated to their satisfaction. We shall, therefore, reverse the decrees of the Court below, with costs to the appellants, and remand the cause, so that it may be concluded in conformity with this opinion.

By BARTOL, J.—I was prevented, by indisposition, from hearing the whole argument in this case and therefore, could not participate in its decision. But having had an opportunity of examining the questions involved, and of uniting with my brothers in consultation upon the case, concur with them in the foregoing opinion, and the reasoning on which it rests.

*Decree reversed and cause remanded.*

