LAURA PATTERSON, SIDNEY T. DYER et at. *vs.* ESTHER S. BUCHANAN, Administratrix, et al.

*French Spoliation Claims—Distribution of Award to Next of Kin of Original Sufferers per stirpes—Mistake as to Members of Firm Suffering Loss—Findings of Court of Claims—Estoppel—Res Adjudicata.*

The Acts of Congress relating to the French spoliation claims directed the Court of Claims to determine the validity and amount of the claims to indemnity arising from the depredations of French cruisers prior to 1800, and it was provided that payment of the claims should be made to the next of kin of the original sufferers. The Supreme Court held that the payment of such a claim was a gift to the next of kin living at the date of the distribution to be ascertained according to the statutes of distribution of the States of their domicil. In 1798 the firm of Smith & Buchanan, of Baltimore, then composed of S. Smith and J. A. Buchanan, lost two vessels and their cargoes, which were seized by French cruisers. In 1818 W. Buchanan became a member of said firm and was eventually the surviving partner. Plaintiff was appointed administratrix of W. Buchanan, and as such prosecuted the claim for said loss by the firm of Smith & Buchanan in the Court of Claims, and received a sum of money therefor under an Act of Congress. She then filed the bill in this case asking the Court to take jurisdiction and distribute the fund among the persons entitled. It was discovered upon taking testimony that W. Buchanan was not a member of said firm at the time the losses occurred, as was supposed when plaintiff filed her petition in the Court of Claims. *Held,*

1st. That the facts that W. Buchanan was erroneously supposed to have been the surviving partner of the firm which originally suffered the loss and that the plaintiff as his administratrix, with the consent of the defendants, collected the money for said claim, whereas the proper claimant should have been the administrator of J. A. Buchanan, does not estop the defendants from now showing that the next of kin of W. Buchanan are not entitled to share in the distribution.

2nd. That the question as to whether plaintiff was the proper party to file the petition for said loss was not passed upon by the Court of Claims, but the findings of that Court were advisory only, not determining finally who were the next of kin of the original sufferers, and this Court is now authorized to correct said mistake and make distribution of the fund to the persons entitled to receive the same under the provisions of the Act of Congress.

3rd. That the amount received by the plaintiff must be distributed among

the next of kin of S. Smith and J. A. Buchanan, who were the original sufferers, *per stirpes* and not *per capita*, according to the Statute of Distribution of this State.

Appeals from a decree of Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.), by which it was adjudged that the fund in the case " be divided into three equal parts, and that one of said three equal parts of said fund be distributed among the next of kin of each of the partners of the firm of S. Smith & Buchanan, to wit, Samuel Smith, deceased, James A. Buchanan, deceased, and William B. Buchanan, deceased, in being on the third day of March, 1899, *per stirpes* and not *per capita*, treating the said Samuel Smith, James A. Buchanan and William B. Buchanan, respectively, as the original *stirps*, according to the laws of the State of Maryland and the statutes of this State in such cases made and provided."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and JONES, JJ.

*Arthur W. Machen* and *Arthur W. Machen, Jr.*, for Laura Patterson and Sidney T. Dyer, appellants.

The losses were sustained in the year 1798 by a firm of merchants trading under the name of S. Smith & Buchanan. Those who *at that time* were partners in said firm were, of course, the original sufferers ; and the evidence shows that this firm then consisted of Samuel Smith and James A. Buchanan. Upon them the loss originally fell. Any person who afterwards became partner in the house could only derive an interest in the claim by assignment; he was not and could not be an original sufferer. The next of kin, therefore, of Samuel Smith and James A. Buchanan who were living on March 3, 1899, are equitably entitled to the fund now in the hands of the appellees, according to the rule authoritatively laid down by the Supreme Court of the United States.

It is contended, however, on behalf of the appellees, Esther S. Buchanan and her brother, Wilson C. Buchanan, that the distribution must be made upon the theory that William B.

Buchanan, James A. Buchanan's son, who was an infant only three years old when the French captures were made in 1798, and was not admitted into the firm until 1818, must be treated as if he had been one of the original sufferers, because of the mistake through which Esther S. Buchanan, as his administratrix, was allowed to collect the money, whereas the formal claimant should have been the administrator of James A. Buchanan, the real surviving partner of the firm of Smith & Buchanan as it existed in 1798. It was upon this theory that the order of Judge Stockbridge from which the appeals have been taken proceeded, but we respectfully submit that is unfounded in law, as it is plainly opposed to equity and good morals.

There can be no doubt that Miss Esther S. Buchanan prosecuted the claim on behalf of S. Smith & Buchanan with the full consent and authority of all the next of kin both of Samuel Smith and James A. Buchanan. The friendly association of the *Smith* family with her appears on the Record in the deposition of R. Carter Smith, filed in the cause in conjunction with Miss Buchanan's own deposition, and put in evidence here by the plaintiff. This deposition also shows that Mr. Smith was uncertain as to the date of William B. Buchanan's becoming a member of the firm, and consequently was unaware that it was after the acts of spoliation had been committed. All the parties concerned had committed their claims and the assertion and protection of their rights to the same counsel, and these counsel had charge of all the proceedings.

It is evident that the counsel thus representing the entire claim acted in the belief that William B. Buchanan was a partner at the time the losses occurred. A close scrutiny and comparison of documents might perhaps have brought the truth to their attention, but there was nothing that induced them to institute such scrutiny. Miss Buchanan's deposition appended to the claim stated that "William B. Buchanan was the surviving member of the firm of S. Smith & Buchanan, which sustained heavy losses by French spoliation," a form of expression which seemed to impart that he was a member

of the house in 1798.  In the petition or claim, as prepared by the counsel and sworn to by Miss Buchanan, only one firm of S. Smith & Buchanan was mentioned, and William B. Buchanan was described as survivor of it, and in the next paragraph it was stated that a share of the ship Jane and a share of her cargo, in 1798, and at the time of the seizure, "belonged to the said firm."

In both petitions it was alleged as plainly as possible that the original sufferers and original claimants were the firm of S. Smith & Buchanan, and that their claim was founded on seizures made in 1798, and constituted valid claims against the French Republic prior to the treaty of 1801.  As to Esther S. Buchanan, the petitioner, it was alleged that she was administratrix of William B. Buchanan, and that he was surviving partner of the firm.  In neither petition was it stated who *composed* the firm of S. Smith & Buchanan.

In the certificate of the Secretary of the Treasury in case No. 381 (relating to the ship Jane and her cargo), upon which the money was paid, and purporting to be given to "Esther S. Buchanan, on whose behalf an appropriation or award was made," etc., and who is described in the caption of the certificate as "Esther S. Buchanan, administratrix, representing Smith and Buchanan, deceased, "the firm of Samuel Smith & Buchanan" is stated to have been "the orginal owners of the claim upon which said award was made."

That no necessity was felt to be exact in detail is strikingly shown by a comparison of the Eleventh finding, in case No. 381, which represents William B. Buchanan as an "owner of the Jane," with the second finding in the same case, which states, in strict conformity with the facts, that the Jane was "owned by John Hollins, of Baltimore, one-half, and by *Samuel Smith* and *James A. Buchanan*, of Baltimore, one-half," thus necessarily excluding any other person.  Again, the fifth finding is that "the firm of S. Smith & Buchanan were the owners of one-half of the vessel" (the Jane), which taken in connection with the second, shows that the firm of S. Smith & Buchanan must have consisted of Samuel Smith and James A. Buchanan.

From the whole it appears that no inquiry was judicially made into the question who constituted the firm of S. Smith & Buchanan in .1798, which firm, as was established by the evidence, had a valid claim against the French Republic at the time of the making of the treaty in 1801.   That Esther S. Buchanan in fact represented the next of kin of those who, as members of the firm, were the original sufferers and claimants against the French Republic was admitted.   And the money was paid to her for distribution accordingly.   It was *supposed* that William B. Buchanan was a member of that firm; yet, according to the liberal practice of the Court of Claims, that error and consequent informality was of no moment.   It might have been corrected if counsel had discovered it, and it had been thought worth while to ask an amendment and the substitution of an administrator or administratrix of James A. Buchanan for the administratrix of William B. Buchanan.

The nature of the jurisdiction of the Court of Claims must be found in the Act of Congress which conferred it, and that Act expressly declared that its findings " shall be taken to be merely advisory as to the law and facts found, and shall not conclude either the claimant or Congress."   Whatever parties were before it were there when it was in the exercise of the limited authority so conferred.   It had no. authority to pronounce any judgment; it could only make certain inconclusive findings and make a report to Congress.   In the nature of things, no subsequent Act of Congress could give to that proceeding *judicial* qualities which it did not have at the time.

So far from the Court of Claims deciding between two partnerships, or weighing the respective claims of two partnerships, the fact that there had been two partnerships of S. Smith & Buchanan was never brought to the notice of the Court at all. All that was represented to them was that there was a partnership of S. Smith & Buchanan in 1798, which suffered the losses, and it was averred that William B. Buchanan was· a member of the firm of S. Smith & Buchanan, an allegation which was not well founded, if by it was meant that William B. Buchanan was a member of the firm of that name which existed in 1798.

Esther S. Buchanan being the representative of all the next of kin, including the appellants, so that the entire proceeding was conducted by her for the common benefit of all concerned in the recovery of the claim, there was no room for an issue between any of the next of kin, either of Samuel Smith or of James A. Buchanan and herself, as to any fact affecting the distribution of the money after its recovery.

Thus, every essential requisite of a legal estoppel is wanting in this case. There was no *issue* made on the matter now in question; there were no parties before the Court between whom such an issue could have been debated; the appellants, the parties against whom the estoppel is sought to be raised, were not parties to the cause; there was no hearing upon this matter of the partnerships nor opportunity for such a hearing, no trial involving it, no judgment and no Court having jurisdiction to pass a judgment. If a point had been started that Miss Buchanan, as administratrix of William B. Buchanan, was not the proper person to prosecute the claim of the firm of S. Smith and Buchanan of 1798, the only parties between whom it would have been discussed were the United States on the one side and Esther S. Buchanan on the other.

*Frank P. Clark*, for J. Louis Smith *et al.*, appellants.

*Archibald H. Taylor* and *E. P. Keech, Jr.*, for the appellees :

The Court of Claims, formulated and transmitted to Congress its decisions or findings in these two cases. In the case of the " Patapsco" the Court reported *inter alia*, as follows : " John Donnell and the firm of S. Smith & Buchanan owned jointly forty-one bales of cotton shipped on said Patapsco. * * * Samuel Smith, James A. Buchanan and William B. Buchanan, citizens of the United States, formed the said firm of S. Smith & Buchanan. * * * The said firm of S. Smith & Buchanan and John Smith, Jr., a citizen of the United States, owned jointly one-half by said firm and one-half by said John Smith, Jr., seventy hogsheads, 1,233 sacks of coffee, shipped on said Patapsco * * * and

that the claimants are entitled to the following sums from the United States. * * * Esther S. Buchanan, administratrix of the estate of William B. Buchanan, and who was the surviving partner of the firm of S. Smith & Buchanan, deceased, to the sum of $25,056.00."

And in the case of the " Jane " the report was : " The firm of S. Smith & Buchanan were owners of one-half of the vessel and of 7-16ths of the cargo. * * * William B. Buchanan was the surviving partner of the firm of S. Smith & Buchanan. The claimant, Esther S. Buchanan, has produced letters of administration for the estate of William B. Buchanan, and has otherwise proved to the satisfaction of the Court that the person of whose estate she is administratrix was the same person who was the owner of the " Jane " and her cargo in 1798, and a citizen of the United States, and the claimants are .entitled to the following sums from the United States : Esther S. Buchanan, administratrix, representing Smith & Buchanan, $11,660.21."

Congress, by Act of March 3, 1899, accepted, ratified and enacted as binding on the government and all parties these findings or adjudications and made an appropriation for the payment of all these awards, and in so doing, they both used the precise words found in the report of the Court of Claims, and also preserved the same grouping of the various claims which the Court had seen wise to adopt. *U. S. Statutes at Large*, vol. 30, page 1195.

Following the passage of this Act, and in order to comply with the only additional condition it imposed, Miss Buchanan made application to the Court of Claims for the issue of the prescribed certificates. From these certificates, it appears that the Court of Claims certified to the Secretary of the Treasury that " Esther S. Buchanan, on whose behalf an appropriation or award was made by the Act of March 3, 1899, * * * represents the next of kin of William B. Buchanan, surviving partner, etc., deceased, the original owner of the claim upon which said award was made," in one instance, and "surviving member of the firm of S. Smith & Buchanan, deceased, the original owner, etc.," in the other.

An examination of the answers originally filed by these defendants discloses a dispute as to the shares of the three partners in the firm assets, which has since been abandoned. But not one word of denial of the right of William B. Buchanan's next of kin to share in the fund is found in either of them. On the contrary, they both expressly admitted that William B. Buchanan had an interest in the firm, and his next of kin in the awards. Later, however, when the proof in support of their averment, with respect to the shares of the partners, was found deficient, both sets of these defendants (now appellants), filed amended answers, and for the first time, in the whole course of the proceedings for the recovery and distribution of these awards, asserted that the descendants of Samuel Smith and James A. Buchanan are the only persons among whom the fund in Court should be distributed, and that no portion of it should be given to the descendants of William B. Buchanan as such, and they offer to prove that William B. Buchanan did not become a member of the firm until after the losses had happened, and that, therefore, contrary to the findings of the Court of Claims, contrary to the action of Congress in adopting and ratifying these findings, and in *making its gift* in accordance with them, contrary to the certificate of the Court of Claims, on the basis of which alone the Secretary of the Treasury was authorized to pay the awards, the Courts of the State of Maryland have the right to review all the action of Congress and the Court of Claims leading up to the payment of the awards to Esther S. Buchanan, administratrix of William B. Buchanan, and to *re-donate* the gifts or gratuities to persons other than those designated by Congress as the objects of its bounty.

In order to prove the allegation, that William B. Buchanan was not a member of the firm of S. Smith & Buchanan at the time of the happening of the losses, the appellants offered certain evidence, most of which is objectionable in itself for various reasons, and all of which was before the Court of Claims prior to its first findings on these claims. We submit, that, even if this proof were admissible, it would not conclusively

prove that William B. Buchanan was not a member of the
firm at the time the losses happened, notwithstanding his ex-
treme youth at that time.    On the contrary it is quite possible,
both legally and otherwise, that William B. Buchanan was a
member of the firm at the time referred to.    But, aside en-
tirely from the discussion of the admissibility or weight of
this evidence, we respectfully submit, that it is wholly incom-
petent, even by the use of the most plenary proof, to vary the
terms of the gifts made by Congress, or to divert the benefit
of them from the persons designated as its donees, and the
objects of its bounty.

Under the authority of *Van Wagenen* v. *United States*, 25
Ct. Claims, 110; *Durkee* v. *United States*, 28 Ct. Claims, 326;
*United States* v. *Gilliat*, 164 U. S. 42, it was perfectly com-
petent for any of these appellants to have intervened in the
proceedings originally instituted by Miss Buchanan for the
recovery of the claims at any stage, and to have asserted in
the Court of Claims the claim now presented by them, either
by controverting her right or propounding the superior right
of one of the two partners other than Wm. B. Buchanan.    But
they did not do so.    On the contrary, the appellants state in
their answer that Miss Buchanan filed her petition in that
Court *with their knowledge and approbation*, and we have
pointed out that the late Robert Carter Smith, who was ad-
ministrator of Samuel Smith, and as such the legal represen-
tative of the appellants, was actively engaged practically as a
co-plaintiff, not only in prosecuting individual claims of his
decedent growing out of the same captures, but also as a
witness in support of Miss Buchanan's claims, *and as such
testified to the composition of the firm of S. Smith & Buchanan,
and to the membership of William B. Buchanan therein.*

After these findings had been accepted and acted upon by
Congress, and that body, in the fullness of its power over the
whole subject, selected certain persons whose claims had been
favorably reported to it by the Court of Claims, and made them
the objects of its bounty on account of the meritorious acts
of their ancestors by donating to them the amounts of the

awards certified by the Court, it accepted as binding the findings of the Court as to the names and identity of the original sufferers, and the amounts found to be due them respectively. And at the same time it committed to the Court of Claims the further determination of one more fact.   This was the formal and solemn adjudication that the personal representatives of the respective sufferers did in fact represent the next of kin of these sufferers, the actual donees named in the Act of Appropriation, and not only that in this case Miss Buchanan was the legal representative of the survivor of the firm of S. Smith & Buchanan, and consequently of that firm, *but also that she represented the next of kin of William B. Buchanan, that survivor.*   See *Proviso,* page 1191, Act of March 3, 1899, vol. 30, U. S. Stat. at Large.   This adjudication was in form and in fact a judgment, and it is not the subject of appeal or of attack in a collateral proceeding.   *United States* v. *Gilliat,* 164 U. S. 42.

Every step in the original proceedings in the Court of Claims was taken by Miss Buchanan, as administratrix of William B. Buchanan, on the theory that a firm of which he was the surviving member, and of which the other members were Samuel Smith and James A. Buchanan, and the firm name of which was S. Smith & Buchanan, was the proper object of the bounty of Congress.   The findings of the Court of Claims established the same fact, and Congress, when it accepted these findings and made the appropriation in accordance with them, determined that it would make its gifts to that firm, composed of the three persons above referred to.   The same fact was judicially determined by the Court of Claims when it issued its certificates to be transmitted to the Secretary of the Treasury as his warrant for the payment of the awards. In other words, no public or private act was left undone which would prevent the final adjudications in these cases from constituting, in effect, judgments.   As his Honor, JUDGE STOCKBRIDGE, so admirably said in the opinion below:   " In order to confer jurisdiction for the entry of a judgment two things are necessary—action by a legislative body, which confers a

jurisdiction, and an action of a judicial body in conformity with the jurisdiction conferred. What happened in this case was a jurisdiction conferred to investigate and a report made by the judicial body, and then the action of the legislative body making the necessary appropriation to satisfy the finding. While the order is inverted from that which usually obtains, I do not see how it can be successfully argued that when both the legislative and judicial bodies have acted, each within its appropriate sphere, that the net result is anything less than a judgment." Consequently, the contention of the appellants constitutes in one view an attempt to impeach a judgment collaterally, and as such must necessarily fail. *McKenzie* v. *B. & O. R. R.*, 28 Md. 161; *Albert* v. *Hamilton*, 76 Md. 304–11; *Boulden* v. *Lanahan*, 29 Md. 200; *Archer* v. *State*, 74 Md. 510; *Riley* v. *Bank*, 81 Md. 14–17; *Royston* v. *Horner*, 86 Md. 249.

The awards were gifts pure and simple. In this light it is manifestly incompetent for anyone to alter their terms, or in any way to divest the rights of the donees, the gifts having been finally made. *Emerson* v. *Hall*, 13 Peters, 409 ; *The Josefa Segureda*, 10 Wheaton, 312; *Blagge* v. *Balch*, 162 U. S. 439. In this respect, the position of the appellants is comparable to that of one who assails a deed of trust after claiming under it. *Linville* v. *Hadden*, 88 Md. 594–7; *Loney* v. *Bailey*, 45 Md. 447. Or that of a devisee of property upon condition who seeks to avoid the performance of the condition. *Fisher* v. *Boyce*, 81 Md. 152–3; *Smith* v. *Towers*, 69 Md. 77; *2 Minor's Institutus*, pages 277–8; *Hyatt* v. *Vanneck*, 82 Md. 465.

If there was a mistake or a wrong judgment of the Court obtained by somebody's fraud, the Court of Claims is the only tribunal in the world that had or has any jurisdiction to determine the question as to who were the rightful " original sufferer " or sufferers entitled to the " gift," and its jurisdiction is derivable solely from the Act of Congress. So that if the judgment of the Court is to be reversed or corrected, it must be in that Court alone which had the jurisdiction to entertain the controversy and render the decision.

FOWLER, J., delivered the opinion of the Court:

In the latter part of the eighteenth century the firm of S. Smith & Buchanan, of Baltimore, Maryland, was largely engaged in mercantile transactions both at home and abroad.   In the year 1798 this firm suffered losses by the unlawful seizure of ships and cargoes in which it was interested, and it is for the injury thus sustained that the plaintiff in this case secured the payment of thirty-six thousand dollars to her as the administratrix of William B. Buchanan.   The bill filed by her asks a Court of equity to take jurisdiction to direct and supervise the distribution of the fund among the parties whom the Court may find to be entitled to participate therein according to the proportion and rule which it may declare should govern the same.   The fund, which has thus been brought into a Court of equity for distribution among those legally and equitably entitled thereto, represents two claims, generally known as " French Spoliation Claims."   The origin and history of these claims have been set forth in several of the reported cases, especially in *Blagge* v. *Balch*, 162 U. S. 461, one of the most recent in which the Supreme Court of the United States has construed the Acts of Congress relating to the subject-matter of this litigation, so that it will not be necessary here to do more than to say that these claims arose out of illegal seizures and depredations by French cruisers upon American commerce.   The persons who thus lost property and their descendants claimed that through the effect of a subsequent treaty between the United States and France, the former had assumed the payment of compensation for their losses.   But it was not until 1885 that an Act of Congress was passed providing that " such citizens of the United States or their legal representatives as had valid claims to indemnity upon the French Government arising out of the illegal captures   *   *   *   *   and confiscations prior to the ratification of the convention between the United States and the French Republic, concluded on the 13th September, 1800," * * * might apply to the Court of Claims within two years from the passage of the Act.   It was especially provided, however, that the findings of the Court of Claims should not

be conclusive either upon the United States or the claimants, and that nothing in the Act should be construed as committing the former to the payment of any such claims.

It was under this Act of 20th January, 1885, that the plaintiff filed several petitions in the Court of Claims, based upon the seizure and confiscation of two vessels, the Jane and Patapsco and their cargoes.    The vessels were owned by Samuel Smith and James A. Buchanan in their individual capacities and the cargoes by the firm of which they were the sole members.    Both losses occurred in 1798.    It appears from the the evidence that William B. Buchanan, the plaintiff's intestate, was not born until 1795, so that he was only three years old when the losses occurred, and can hardly be presumed, in the absence of evidence, to have been a member of the firm at that time.    If he was not a member of the firm when the losses were sustained he, of course, was not an "original sufferer," and it is contended by the defendants that he and his representatives are therefore excluded from claiming in *that character*—and that Samuel Smith and James A. Buchanan, who at *that time* were the sole partners of the firm which sustained the loss, are the only "original sufferers."    It appears from the evidence that the plaintiff's intestate did not become a member of the firm until 1818.    The Court below held, however, that inasmuch as the plaintiff had made the claim in the character of administratrix of William B. Buchanan, surviving partner of the firm, and the fund had been paid to her in that capacity, the defendants are estopped to deny her pretensions and that, therefore, the fund in her hands should be divided into three equal parts, one of such equal parts to go and be distributed to the next of kin of each of the three partners of the firm.    It was also held by the Court below that the distribution should be made according to the provisions of the Maryland Statute of Distribution.

From the decree embodying these views, all the defendants have appealed on the ground that the fund should be divided equally between Samuel Smith and James A. Buchanan, the "original sufferers" and the original members of the firm of S.

Smith & Buchanan.   The second appeal was taken by J. Louis Smith and others on the ground that the distribution should not be made under our statute *per stirpes*, but that all are to take as a class equally.

The case was earnestly and exhaustively argued on both sides, but it does not seem to us that any serious questions are presented by either appeal.

I. The *first* appeal involves the question whether William B. Buchanan is entitled to share in the distribution of the fund as one of the original sufferers, because he was erroneously supposed to have been a member of the firm of S. Smith & Buchanan in 1798, and because the plaintiff, as his administratrix was allowed to collect the money in question, whereas the real claimant should have been the personal representative of James A. Buchanan, who was the surviving partner of the firm as it existed in 1798.

Aside from all other views, it seems to us too clear for controversy that if it be conceded, as it must be under the evidence, that the plaintiff's intestate, William B. Buchanan, was not one of the original sufferers, she will not be allowed in a Court of equity to participate in the distribution, except as one of the next of kin of James A. Buchanan. For it is apparent, not only from the Acts of Congress under which these claims have been recognized and paid by the government, as well as by the most recent decision of the Supreme Court of the United States, (*Blagge* v. *Balch, supra*), that the money paid for losses sustained was intended as a gratuity to the next of kin of the original sufferers who shall be living at the time the Act was passed, viz., 3rd March, 1899.   The mere fact that the claim was filed by the plaintiff in her name and as administratrix, &c., is immaterial   The whole record shows beyond question that she represented with their consent all the parties who are now claiming against her.   But it is contended that the judgments and findings of the Court of Claims in connection with the action of Congress are conclusive, and that, therefore, all are bound by the decision of that Court that the plaintiff was, in fact, the administratrix of Wm. B. Buchanan, and that he

was the survivor of the firm, and that, therefore, he was one of the original sufferers.

We cannot, however, agree to this view.   On the contrary it seems to us clear from a careful inspection of the record that the question as to whether the plaintiff was, in fact, the proper formal party to file the petition in the Court of Claims was never suggested to or considered by that Court.   Indeed, it seems to have been conceded on all hands, and properly so, that she was the representative of the surviving member of *a firm.*   But the mistake was in assuming that her intestate was a member of *the firm* as constituted at *the time* of the losses. Nor does it appear that this mistake was discovered until after the filing of the bill in this case, when it was learned from the testimony of the plaintiff that her intestate was an infant only three years old in 1798, and therefore could not have been a member of *the* firm of S. Smith & Buchanan when the losses were sustained.   Nor do we think the Act of Congress, of 1899 appropriating money to pay these and other claims imparted to the reports or findings of the Court of Claims any element of finality—except as to the amount of loss sustained by the original sufferers.   In the case of *Blagge* v. *Balch, supra*, CHIEF JUSTICE FULLER thus quotes with approval from *Buchanan* v. *U. S.*, 24 Ct. of Cl. 74–81.   When the amount of the claim has been determined and reported, " it will then be within the legislative discretion—

"(1) To ascertain through the proper committees who are the persons who should receive the money; or

"(2) To provide for the ascertainment of that fact by additional legislation ; or

"(3) To confide the money to the administrators ' * * * * trusting that they and the Courts of which they are the officers and agents will distribute the fund among  *  *  * next of kin of the original claimants "—

In our opinion Congress adopted the last course in passing the Act of 1899, whereby money was appropriated and directed to be paid to the plaintiff as administratrix.   In none of the cases relating to " French Spoliation Claims," under the

Act of 1885, has the Court of Claims "assumed to determine who were the next of kin of a deceased claimant    *    *    *    *. In other words, the Court has not assumed to determine what persons are legally or equitably entitled to receive the money which Congress may hereafter appropriate for the discharge of these claims." *Blagge* v. *Balch, supra.* And finally, by the very terms of the Act itself, the findings are only advisory and do not fix or attempt to fix judicially the rights of any person. As was suggested in *Buchanan* v. *U. S., supra,* Congress might have ascertained through the proper committees or have provided by legislation for the ascertainment of the beneficiaries, but they did not exercise that power by the Act of 1899, which appropriated money to pay the claims. The case of *United States* v. *Gilliat,* 164 U. S. 44, was relied on to show the conclusiveness of the finding of the Court of Claims in cases under the Act of 1885 and of that Court's certificate to the Treasurer of the United States as to the proper person to be paid. But an examination of that case will show that it is not in point. The Court of Claims in *Gilliat's case* was acting under the specific Act of August 23, 1894, which the Supreme Court held on appeal, made the decision and certificate of the former Court final, but at the same time declared that its findings in cases like these now before us under the provisions of the Act of 1885 are only advisory. We conclude, therefore, that there is nothing either in the finding and certificate of the Court of Claims or in the legislation of Congress which estops the defendants from showing who were the original sufferers, nor from showing that in point of fact Wm. B. Buchanan was not a partner of the firm of S. Smith & Buchanan in 1798, when its property was destroyed and the loss incurred.

II. We have already referred to the fact that Wm. B. Buchanan was born in 1795, and of course he could not have been in the ordinary sense of that term a partner in 1798. But in addition to this convincing fact it is shown that James A. Buchanan, the junior member of the original firm, in a deposition made in insolvency proceedings in 1821, said his son,

Wm. B., was taken into the firm in 1818. In this same de-
position he also said that certain old accounts which had been
closed and had been unexpectedly collected had been used by
his senior partner, Samuel Smith and himself in equal por-
tions. In the year 1820 the firm consisting of S. Smith, Jas.
A. Buchanan and his son, Wm. B., failed, and executed a
deed of trust to Thomas Ellicott and Jonathan Meredith.
These trustees, in a memorial addressed to the commissioners
appointed under a treaty of 1819, stated that Samuel Smith
and James A. Buchanan, trading as the firm of S. Smith &
Buchanan, were, in the year 1797, owner of one-half of the
Jane and suffered the losses in question. These facts point
strongly to the conclusion that up to the year 1818 Wm. B.
Buchanan had no interest in the firm. In fact, the only ground
to sustain even a supposition to the contrary is the mistake
made by the plaintiff and by those who conducted the case
before the Court of Claims. If the mistake had been called
to the attention of the Court of Claims the proceedings would
undoubtedly have been amended, or as in the case of *The
Clio*, 27 Ct. of Cl. 221, that Court would have said that in-
asmuch as it appeared that the administratrix in fact repre-
sented the descendants and next of kin of the original claim-
ants, and that she was prosecuting the claim with their knowl-
edge and at their request, the technical error of taking out
letters of administration upon the estate of a subsequent mem-
ber of the firm, that is, of one who was not a member of the
firm when the loss was sustained " will not preclude the Court
from rendering a decision upon the merits and reporting the
case to Congress." Indeed all the decisions relating to these
Spoliation Claims appear to rest upon the rule that as provided
by the jurisdictional Act of January 20, 1885, the Court of
Claims was " to examine and determine *the validity* and *amount*
of all claims included within the description " contained in the
Act, and, as was said in *United States* v. *Gilliat*, 164 U. S. 45,
the particular person to whom the appropriation already made
by Congress was to be paid was a " subsidiary question."

If, however, as we hold, the defendants are not estopped by

the findings or certificates of the Court of Claims, and if, as we have also held, there is nothing in the Acts of Congress to prevent the Courts of this State from now correcting the mistake made by those who instituted the proceedings, can there be any doubt that when the plaintiff has come into a Court of equity asking that the fund may be distributed to those entitled, that the distribution will be made to the real beneficiaries—namely, the next of kin of Samuel Smith and James A. Buchanan living March 3, 1899—the date of the passage of the Act making the appropriation? As is said by counsel for defendants in their brief, the plaintiff "asks equitable relief, puts the fund under the jurisdiction of the Court of equity, and prays it may be distributed according to equity." "To make the distribution in the manner now suggested by her counsel on her behalf and divert one-third of the fund away from the lawful course and appropriate it to herself and her brother, because of the accidental advantage given by her position as collector and trustee, and the manner in which the proceeding for its collection was, by mistake, shaped by counsel, who intended to act for the common benefit of all interested * * * * would enable a trustee to abuse her position and commit a breach of trust. It would make the Court go contrary to the rule under which its doors are opened—that he who seeks equity must do equity. It would not accord with the prayer of the bill."

III. The question as to the proper rule of distribution of the fund is presented by the second appeal, and we will briefly consider it. It would seem, however, that since the decision of the Supreme Court of the United States in the case of *Blagge* v. *Balch, supra,* construing words in Act of 1891 precisely the same as those in Act of 1899 there can be little or no room for further discussion upon this subject. It was there said " that Congress in order to reach the next of kin of the original sufferers, capable of taking at the time of distribution, on principles universally accepted as the most just and equitable, intended next of kin according to the statutes of distribution of the respective States of the domicil of the

original sufferers." The Supreme Court of the United States having therefore so clearly declared what is the proper construction of the Act of Congress it is our duty to follow it—and the result is that the fund must be distributed according to the provisions of our Statute of Distribution *per stirpes* and not *per capita.*

IV. It appears from the evidence that one of Samuel Smith's daughters, Mary Buchanan Smith, married a British subject, John Mansfield, and resided in England until her death. Her husband is also dead. They left a number of children surviving them, but how many, if any, are now alive is not known. The question whether the descendants of Mrs. Mansfield are entitled to share in the distribution of the fund was not passed upon by the Court below, and is not properly before us on these appeals, although counsel representing some of the defendants argued it both in their brief and orally. When the cause is remanded this question may properly be presented to and passed on by the Court below.

It follows that the decree appealed from must be reversed in so far as it directs the fund to be divided into three equal parts and directs one of those parts to be distributed to Wm. B. Buchanan and affirmed as to the rule of distribution adopted·

> *Decree reversed in part and affirmed in part. Cause remanded, costs to be paid out of fund.*

(Decided January 17, 1901.)