MARY JANE THURSTON, Administratrix, *vs.* EDWIN M. WILMER.

*Money Distributable Under Award in French Spoliation Claims Not Liable to Attachment.*

Under the Act of Congress relating to the payment of French Spoliation Claims, it was the purpose of Congress that the sums awarded should be paid as gratuities to the next of kin of the original sufferers from the depredations of French cruisers, and that creditors, legatees and assignees of such sufferers should be excluded. Consequently, a

sum of money paid under the Act to an administrator in this State for distribution among the next of kin of an original sufferer is not liable to attachment in the hands of the administrator for a debt due by a distributee.

Appeal from the Superior Court of Baltimore City, (DOB-LER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. Baker Clotworthy,* (with whom was *J. Southgate Lemmon* on the brief), for the appellant.

*D. Eldridge Monroe,* for the appellee.

*James H. Preston* and *H. Frank Van Lill,* also filed a brief for the appellee.

JONES, J., delivered the opinion of the Court.

This case comes up on appeal from the Superior Court of Baltimore City taken from a judgment of condemnation rendered by that Court in an attachment proceeding against the appellant, garnishee therein, as administratrix *d. b. n.* of John Hollins. The garnishee pleaded *"nulla bona;"* and to her plea the plaintiff made replication that on the day of the laying of the attachment in her hands she " had to the value of the sum of $1,301.45 in the writ of attachment * * * specified of the goods, chattels and credits of the defendant in her hands." Issue was joined on the replication and the case was tried before the Court sitting without a jury.

The only facts appearing in the record are those disclosed in the following offer of evidence made by the plaintiff in the attachment. "The plaintiff, to sustain the issue on his part joined, offered in evidence all the original papers in the case of Mary J. Thurston and James Thurston, administrators *d. b. n.* of John Hollins, deceased, against Louisa S. Hollins *et al.,* from the Circuit Court No. 2, of Baltimore City, for the purpose of proving that the said Mary J. Thurston and James

Thurston had been granted letters of administration *d. b. n.* by the Orphans' Court of Baltimore City on the estate of John Hollins, deceased, and that there had been paid to them as administrators of said John Hollins, deceased, by the United States Government under the Act of Congress of March 3rd, 1899, 30 *Statutes at Large*, p. 1191, certain sums of money known as the French Spoliation Claims, and upon the administration of said fund under the direction of the said Circuit Court No. 2, of Baltimore City, the defendant, Jane Lewis, had been ascertained and deemed to be one of the next of kin of the said John Hollins, the original sufferer, within the meaning of the Act of Congress, and that the auditor's account, stated in pursuance of said decree, and which had been finally ratified and confirmed, had distributed to the said Jane Lewis as one of the next of kin of the said John Hollins, the sum of $168.70, which said sum was in the hands of the garnishee as administratrix as aforesaid." To this offer of evidence the garnishee objected and the objection having been overruled and the evidence admitted, this action of the Court was made the ground of the garnishee's first exception.

No other evidence was offered, whereupon the garnishee prayed the Court to rule: 1st. "That there is no evidence in this case legally sufficient to entitle the plaintiff to recover."

2nd. "If the Court shall find that the defendant is one of the next of kin of John Hollins, and as such is entitled to share in the distribution of the funds received by the garnishee from the United States under the Act of Congress approved March 3rd, 1899 (30 *Statutes at Large*, p. 1191), and that her share though ascertained by proper proceedings in the Circuit Court No. 2, of Baltimore City, has not yet been paid to her by the garnishee, then said share is not liable to attachment in the hands of said garnishee and the verdict of the Court sitting without a jury must be for the garnishee."

The Court rejected these prayers and this action of the Court upon the prayers was made the subject of the second and only other exception by the garnishee. Upon the evidence offered and admitted by the Court a finding was ren-

dered for the plaintiff for $168.71, and there was judgment
of condemnation accordingly entered for that amount against
the garnishee. The record lacks fullness, definiteness and
precision in its presentation of the case to this Court, but it
appears from the recitals made therefrom that the subject of
the judgment of condemnation, from which the appeal here
was taken, is a share of a fund in the hands of an adminis-
tratrix or trustee which at the time of the judgment rendered
has been ascertained and set apart to the defendant in the at-
tachment in and by an auditor's account filed in proceedings
had in the course of administering the fund by the trustee in
a Court of equity; and which had been finally ratified and con-
firmed.

That, as a rule, money or credits, belonging or due to a
defendant in an attachment, may, under the circumstances
named, be made the subject of attachment, and of a judgment
of condemnation in an attachment proceeding admits of no
controversy under the decisions of this Court. As to this,
reference need only be made to the case of *Groome* v. *Lewis*,
23 Md. 137, referred to and approved in the case of *Early* v.
*Dorsett*, 45 Md. 462. If therefore the contention of the appel-
lant for a reversal of the judgment appealed from in this case
is to prevail we must find something in the circumstances of
the case that makes it an exception to the rule as respects the
money or credits here condemned, if there is no reversible
error otherwise in the action of the trial Court which has been
made the subject of the exceptions that have been herein set
out. In the brief of the appellant's counsel it is said, " At the
trial there was but one question before the Court, raised both
upon the evidence submitted and the prayers, to wit ; is the
fund awarded by Congress under the Act of March 3rd, 1899
(30 *Statutes at Large*, page 1191), to the next of kin of the
original sufferers named in said Act, subject to attachment
and condemnation in the hands of the administrators or officers
named by the Act to receive the same, before it is paid over
to the next of kin as provided by said Act? " And then it is
further said that " the Court   *   *   having decided that it

is, the garnishee has taken this appeal." In accordance with this statement of the question presented for decision on this appeal no other has been suggested either in the brief of counsel for the appellant or in the oral argument before this Court. We do not see that the record properly raises any other, though other questions were averted to, out of caution perhaps in the brief of the appellee.

We may therefore proceed to the inquiry which the appellant urges as the ground of this appeal as the only one here involved. The appellant contends that the funds here attached are not liable to attachment because of being part of funds appropriated by the Act of Congress already referred to to pay what is known as French Spoliation Claims; and to which the defendant in the attachment derived title as next of kin to the original sufferer whose claim to bounty under that Act was recognized in the particular appropriation which passed into the hands of the appellant (garnishee below) as administratrix *d. b. n.* of said original sufferer; and which at the time of the attachment laid she was engaged in distributing to parties entitled under the direction of a Court of equity as shown by the testimony in the case. This contention is based upon the reading of a particular clause of the Act of Congress of March 3rd, 1899, and the construction placed by the Supreme Court of the United States upon a precisely similar clause in the Act of Congress of 1891 making appropriation for payment of French Spoliation Claims; and which came before the Supreme Court for construction in the case of *Blagge* v. *Balch*, 162 U. S. 439. The clause referred to reads as follows: "Provided, that in all cases where the original sufferers were adjudicated bankrupts, the awards shall be made on behalf of the next of kin instead of the assignees in bankruptcy, and the awards in the case of individual claimants shall not be paid until the Court of Claims shall certify to the Secretary of the Treasury that the personal representatives on whose behalf the award is made, represent the next of kin, and the Courts which granted the administrations respectively shall have certified that the legal representatives have given adequate security for

the legal disbursement of the awards." There was in the Act of Congress, March 3rd, 1891, appropriating money for the payment of French Spoliation Claims a provision identical in terms with the one just quoted from the Act of 1899. This provision in the Act of 1891 became the subject of judicial construction in a number of cases, soon after the passage of the Act, as to the nature of the appropriation made by Congress, as to who were the intended beneficiaries, and as to the rule for distribution among those designed to take the money appropriated; and finally came under review in the Supreme Court of the United States in the case of *Blagge* v. *Balch* just referred to. With this case before us we need say but little as to the true interpretation of the clause in the Act of Congress which has been recited, since the intent and policy of Congress, in its enactment has been there definitely declared and settled. It was there held that appropriations made by Congress for payment of what are commonly known as French Spoliation Claims were gratuities from the Government to the next of kin of the original sufferers; and that such next of kin were to be ascertained as of the date of the Act which made the appropriation; and to be next of kin according to the statutes of distribution of the respective States of the domicil of the original sufferers. It had been contended before the Court that the next of kin were to be preferred and were meant to take to the exclusion of assignees and creditors only in the cases in which the original sufferers had been declared bankrupt; but against this contention the Court said: " It appears to us that Congress intended that the next of kin should be the beneficiaries in every case; that the limitation is express, and that creditors, legatees and assignees, all strangers to the blood, are excluded." We take this to be a declaration, when read in the light of the whole trend of the decision, that it was the policy and intent of Congress that the next of kin, as defined by the Court, should be the actual beneficiaries of its bounty, and that it was not contemplated that this bounty should be intercepted for the benefit or enjoyment of any other persons before reaching the intended bene-

ficiaries, whether by assignment, legal process or any method that would divert it from being received and enjoyed by these beneficiaries. In the case of *Patterson et al.* v. *Buchanan admrx. et al.*, 92 Md. 334, this Court made reference to what was said by the U. S. Court of Claims in *Buchanan* v. *U. S.*, 24 Ct. of Cl. 74, &c., to the effect that when the amount of the claim has been determined and reported " it will then be within the legislative discretion :

(1.) To ascertain through the proper committees who are the persons who should receive the money ; or

(2.) To provide for the ascertainment of the fact by additional legislation ; or

(3.) To confide the money to the administrators * * trusting that they and the Courts of which they are the officers and agents will distribute the fund among * * * next of kin of the original claimants ;" and then said, "in our opinion Congress adopted the last course in passing the Act of 1899."

Congress then having confided this fund to officers, created by the State law, to be distributed to its intended beneficiaries we think it is but proper that our Courts should protect and aid these officers in the execution of the trust and see that effect is given to the intent and policy of Congress as this has been authoritatively declared by the high authority to whose decision, in this regard, we have made reference. We think it proper therefore, that we should hold that funds in the hands of administrators under the Act of Congress of 1899 here in question should be an exception to the rule making funds in the hands of administrators and trustees liable to attachment and judgment of condemnation. The case here is closely analogous to the class of cases in which funds in the hands of public officials to be paid out for account of the government are held, upon grounds of public policy not liable to attachment. It follows from this that there was error in the rulings of the Court below both as to the admissibility of the evidence offered and admitted by the Court, and upon the prayers submitted on behalf of the appellant

(garnishee below); and the judgment in the case will be reversed.

> *Judgment reversed with costs to the appellant.*

(Decided January 17th, 1902.)